## M. W. CABANESS v. S. W. HOLLAND.

### Decided October 12, 1898.

**1. Fraud—Rescission—Consideration from Third Party.**

Where a third party, upon a consideration from plaintiff, conveyed land to defendant in consideration of a stock of cattle on the range conveyed by defendant to plaintiff, the latter could maintain an action to rescind the trade and recover of defendant the land so conveyed by such third party, on proof of fraudulent representations, as to the number of cattle, made by defendant to plaintiff.

**2. Fraud—Evidence—Representations to Third Party.**

False representations as to the number of cattle in a stock sold, made by the seller to third parties for the purpose of being communicated to the purchaser, and so communicated, are admissible in evidence, though made several weeks before the consummation of the trade.

**3. Expert Evidence—Stock Cattle—Estimating Number.**

A skilled stockman may testify as to the general rule among cattlemen for estimating the number of cattle from the number of calves branded.

**4. Same.**

On the issue as to the number of cattle in a stock running on the range, a witness familiar with the cattle and their range and who had worked with and gathered them, may give his estimate of the number in the stock.

**5. Evidence—Stock Cattle—Shortage in Other Stocks.**

Testimony by the owner of another stock of cattle in the same county as to the shortage of his stock when gathered, was not admissible to account for the failure of the stock sold by defendant to include the number represented.

**6. Fraudulent Representations—Independent Inquiries.**

The writing of letters by the purchaser seeking information as to the number of cattle in a range stock, to parties to whom the vendor refers him for such knowledge, is no evidence that he sought independent information and did not rely on that furnished by the vendor.

**7. False Representations—Warranty.**

The refusal by the seller to warrant any certain number of cattle to be contained in the stock sold will not prevent his being held liable for false representations as to the number.

**8. Vendor—Representations—Referring Purchaser to Others.**

The vendor is responsible for the truth of the representations of others to whom he refers the purchaser for information, though he disclaim any personal knowledge of their truth and be innocent in respect to the misrepresentation.

**9. Rescission—Waiver—Vendee's Attempt to Sell.**

An attempt by the vendee to sell the property after discovering that he had been defrauded in the trade, may be evidence of waiver of his right to rescission, but can not be treated, in the charge of the court, as an absolute waiver.

**10. Rescission—Parties.**

One making himself a party to a suit for rescission of a conveyance of land towards which he had contributed a part of the consideration, is bound by the decree, and defendant is not prejudiced by the fact that he asked no judgment in his own behalf.

**11. Rescission—Innocent Misrepresentations.**

Misrepresentation concerning a material fact, though innocently made, if acted upon by the vendee, may be ground for the rescission of a sale.

**12. Rescission—Demand Before Suit.**

A formal demand for a rescission is not necessary, before bringing suit, where plaintiff complained of the fraud and asked to be made whole, and defendant refused to do anything in the matter.

APPEAL from Falls.     Tried below before Hon. SAM. R. SCOTT.

*J. A. Martin* and *Z. I. Harlan,* for appellant.

*Rice & Bartlett* and *Dyer & Dyer,* for appellees.

FISHER, CHIEF JUSTICE.—The original plaintiff, S. W. Holland, filed this suit in the District Court of Falls County on the 5th day of November, 1890, against the defendant M. W. Cabaness, to rescind a contract of sale. Plaintiff alleges that in December, 1889, he owned a tract of 350 acres of land in Falls County, Texas, near the town of Reagan, which he valued at $3000; and the defendant Cabaness owned a stock of cattle running on the range in Mitchell and adjoining counties, which he valued at $2000; and McDowell & Peyton owned a tract of 95 acres of land near Reagan, which they valued at $2000; that it was agreed between the plaintiff, McDowell & Peyton, and the defendant that plaintiff should convey to McDowell & Peyton his tract of 350 acres, and that McDowell & Peyton should pay him $1000 in cash, and convey to the defendant Cabaness the tract of 95 acres owned by them; and that the defendant should convey to the plaintiff his stock of cattle in Mitchell and adjoining counties. This tripartite transaction was consummated.

Plaintiff alleges that the defendant falsely and fraudulently represented to plaintiff that he had in said stock on said range twenty-four four-year-old steers, which could be gathered; that he had branded and turned loose on said range in the year 1888 forty head of calves; and that he had branded and turned loose on said range in the year 1889 sixty head of calves; and that there were now in said stock in said range 250 head of cattle that could be gathered. Plaintiff averred that he relied upon these representations and statements and was induced by them to make the trade; that these representations were knowingly false, and were made for the purpose of swindling the plaintiff; that there were no four-year-old steers at all in the stock; that only fifteen calves were branded in 1888, and only thirty in 1889, and that there not more than 125 head of cattle in the entire stock.

The petition also avers that the representations were material in that Cabaness at the time of the trade did not own near the number of cattle that he represented to own, and that they were of much less value than the cattle really owned by him. It is also alleged that the transaction with McDowell & Peyton can not be disturbed, because they were innocent purchasers and were not parties to the fraud perpetrated by Caba-

ness. The plaintiff prayed that he have judgment for the 95 acres conveyed by McDowell & Peyton to defendant Cabaness, and that the title to the same be divested out of the defendant and vested in plaintiff, and that defendant be decreed to have been a trustee therefor for plaintiff. He also prayed for rents, issues, and profits of said land from the date of the transaction, or if it be decreed that he could not recover the land, he prayed in the alternative for $1500 damages.

The defendant answered by general and special exceptions and general denial. All the exceptions were overruled.

At the January term, 1897, a supplemental petition was filed, wherein it is alleged that the original plaintiff, S. W. Holland, died on the —— day of July, 1896, intestate, and that there was no administration on his estate, and the following named parties alleged that they were only heirs at law of said S. W. Holland, deceased, and prayed that they be made parties plaintiff herein, and be allowed to prosecute this suit in their names as plaintiffs, adopting the original pleading of the plaintiff in the case, to wit: W. P. Windzer for himself and as next friend of James Eddie Windzer; Thomas Davis for himself and as next friend of Ida Davis; R. L. Holland and Jane Holland, May Hargrove and husband Fayette Hargrove; Beulah Holland, Joe Holland, and Earnest Holland, all minors, by their next friend, R. L. Holland; Joe H. Holland and wife Mattie Holland; James H. Holland by his next friend Joe H. Holland; Sam W. Holland; and J. T. Brown and wife S. E. Brown.

The case was tried before a jury and there was a verdict for the plaintiffs for the 95 acres of land in controversy and $750 rent, on which judgment was rendered by the court.

*Opinion.*—This case was once before this court, and will be found reported in 30 Southwestern Reporter, 63, to which reference is made for further statement concerning the issues involved in the case, and some of the rulings of the trial court on the demurrers here complained of.

We find the facts substantially in accord with the case made by the plaintiff's pleadings. In addition, we also find that J. H. Holland, a son of S. W. Holland, executed to McDowell & Peyton a deed to 100 acres of the tract of 350 acres conveyed to them as consideration for the trade alleged in the petition. This conveyance from J. H. Holland went in as a part of the consideration for the trade between plaintiff and the defendant and McDowell & Peyton.

We also find that S. W. Holland was ignorant of the true condition of the cattle, and that the stock of cattle sold him were what were understood as stock cattle, and that the defendant Cabaness possessed some knowledge of their number, ages, and sex, and that the cattle at the time were in the range in Mitchell County, and were being handled for defendant by one Beall and Nat Smith, both of whom were familiar with the number, condition and quality of the cattle; and before the trade between the plaintiff and defendant was consummated, Cabaness referred plaintiff

to Beall and Nat Smith, and requested him to write to them concerning the number and condition of the cattle, and especially to Nat Smith. In pursuance to this request, plaintiff wrote letters to these parties and received from Nat Smith a reply as follows:

"COLORADO, TEXAS, December 6.

"Mr. S. W. Holland:

"Dear Sir:—Have just returned from a cow hunt and found your letter awaiting me, which will account for the delay. Judging from the number Mr. Cabaness turned loose, what I have seen in the range, and number of calves branded, I would say there were about 250 head. Yours, etc.

"N. L. SMITH."

The information thus received by plaintiff from Smith, together with representations of the defendant Cabaness, induced the plaintiff to make the trade in question. The statement contained in this letter, together with the representations of the defendant, were not true. He at the time did not own such number of cattle, but did in fact own about the number as stated in plaintiff's petition and there is some evidence in the record which tends strongly to show that, before this letter was written by Smith, the defendant, in effect, requested him to misrepresent to plaintiff Holland the number and quality of the cattle.

Appellant's second assignment of error complains of the ruling of the court in failing to sustain a special exception to the petition on the ground that it shows no right of action in the plaintiff to the land in controversy, because the title to the same was never vested in plaintiff, but passed directly from McDowell & Peyton to the defendant. This question was in effect ruled upon adversely to the appellant on the first appeal of this case. The real consideration for the 95 acres in controversy was advanced by the plaintiff. The effect of the transaction between all the parties was that plaintiff's 350 acres of land was conveyed to McDowell & Peyton for $1000 cash paid by them and the 95 acres in controversy, and this latter tract was received by the defendant in consideration for the cattle sold by him to plaintiff. The consideration received by the defendant was furnished by the plaintiff, S. W. Holland, and in the enforcement of grounds for cancellation by plaintiff of the transaction between him and the defendant, the defendant can be required to account to the plaintiff for the consideration received. A court of equity, in rescinding the trade, would enforce plaintiff's equities in the light of the real facts, and if plaintiff in fact advanced the consideration received by the defendant the court would have the power to hold him responsible to the plaintiff therefor.

It is complained that the court erred in admitting the testimony of witnesses Windzer and Davis as to conversation had with the defendant, and as to messages sent by him through them to the plaintiff, some fifteen

or twenty days prior to the day on which the trade was made, concerning the number and quality of the cattle. This testimony was to the effect that in the conversations with the defendant, he told these witnesses that he had twenty-four or twenty-five head of four-year-old steers, and that he had branded about forty calves the first year that the cattle were carried out to Mitchell County, and the second year about sixty calves. This testimony was clearly admissible. It was admissible as declarations of the defendant, a few days before the trade, as to the number of cattle claimed by him, and it was also admissible as information furnished the plaintiff by these witnesses at the request of the defendant, they having further testified that they furnished Holland with this statement of the defendant.

The sixth assignment of error complains of the ruling of the court in permitting plaintiff to introduce the evidence of witness Beall, to the effect that "cattlemen generally multiplied the number of calves branded by four to get the number of cattle in said brand. According to this rule, the defendant ought to have had 140 head of cattle on the range in the summer of 1889."

The objection as made was because it did not appear that Beall had any personal knowledge of the number of calves actually branded, and that Beall knew nothing about the cattle and calves branded, except as told him by others. The testimony shows that Beall had been in the stock business for a number of years, and that he knew of the stock of cattle owned by Cabaness in Mitchell County, since 1887, and that he had, in some respects, control of these cattle; and he also testified that when Cabaness was at his house in December, 1889, he told him the whole number branded during the year was thirty-five calves.

We can see no objection to this evidence. The witness' familiarity with the handling of stock and his knowledge of that business qualified him to express an opinion as to the number of cattle contained in the stock owned by Cabaness, and to give the rule in general use by stockmen, upon which his estimate was based.

The seventh assignment of error complains of the admission of the testimony of Nat Smith, wherein he stated, "I do not know the exact number (referring to the cattle owned by Cabaness) on the range in Mitchell County in December, 1889, but supposed there was about 100 head. If there were any four-year-old steers, there were but just a few that could not be found. I do not know the number of calves branded, as the tally lists were turned over to John T. Beall each year by various parties. The value of these cattle on the range in December, 1889, was probably about $800 or $1000. I think there were about 100 head of cattle on the range in December, 1889, and they were in fair or good condition."

The objection was that this testimony was not the statement of facts but was the supposition of the witness. The testimony clearly shows that this witness was possibly more familiar with the number and the

range of the cattle owned by Cabaness than anyone else.   He had gathered the cattle and had worked with them for some time.   His using the expression "supposed" was simply a statement of his estimate of the number of cattle in the stock in December, 1889.   In the nature of things it was almost impossible to give the accurate number of cattle in a stock running loose upon the range, and where they were not all gathered and collected, as was the condition of these cattle, the best evidence generally that can be furnished as to their number is the estimate of those who are familiar with the stock and their range.

There was no error in refusing to admit the evidence of witness Waite, as complained of in the eighth assignment of error.   Testimony concerning the Waite cattle was foreign to any issue made in this case. There was no connection between Waite and the plaintiff and the defendant.   Further, his proposed testimony concerning what Beall reported to him was clearly hearsay.

The defendant proposed to testify as to the contents of certain letters written at the dictation of plaintiff S. W. Holland to John T. Beall and Nat Smith, and upon objection by the plaintiff, this evidence was excluded, of which ruling complaint is made in the appellant's tenth assignment of error.   The letters were the best evidence of their contents. They were not produced, nor was any effort made to account for their nonproduction.   The object of this testimony was to show that Holland did not rely upon the representations made by Cabaness, but wrote letters to Beall and Smith inquiring about the cattle.   If the contents of these letters could have been testified to by the defendant or the letters themselves had been before the court, it could have added no force to the defendant's case, because it clearly appears from the evidence of Cabaness himself that these letters were written by Holland to Beall and Smith at the request of Cabaness.   He testified, "Mr. Holland wrote these letters to Beall and Smith at my suggestion.   I suggested them, because they had been handling the cattle.   *   *   *   Then I suggested that he write to Smith and Beall."   And such is also the evidence of Holland. This clearly shows that Holland did not independently seek information concerning the cattle, but he sought it from sources furnished by the defendant, Cabaness.   When Cabaness pointed out Beall and Smith to Holland as the parties who could furnish him information concerning the cattle, he became responsible for the representations that they would make concerning the stock; and he can not be heard to say, because Smith made a false statement, and thereby misled Holland, that he is absolved from responsibility.   When he selected Smith as the medium of information, the law would hold him responsible for any representations that were made by Smith that were calculated to mislead or deceive Holland.

The defendant requested the court to give the following instructions to the jury:

"The court erred in refusing to give in charge to the jury special charge number 1 requested by the defendant and refused by the court.

Special charge number 1 is a follows: 'The defendant asks the court to charge the jury that if they believe from the evidence in this case that, at the time of the consummation of the transaction between Holland and Cabaness, Holland was informed in any way that Cabaness did not know the number of cattle he owned in Mitchell County, and would not warrant any number, and that Holland completed the trade with a knowledge of that fact, they should find for the defendant.' "

"The court erred in refusing to give in charge to the jury special charge number 3, requested by the defendant and refused by the court. Special charge number 3 is as follows: 'The defendant asks the court to charge the jury that if they believe from the evidence in this case that the defendant, in talking about the trade with Holland and in finally consummating the same, only told said Holland what had been told to him, defendant, by others, giving the names of his informants, and the plaintiff Holland knew that the statements and representations of Cabaness were made upon hearsay and not of his own knowledge, and were not stated or warranted as true, then in that event they will find for the defendant.' "

The first of these charges makes the whole case turn upon the proposition that, if Cabaness would not warrant any number of cattle and Holland completed the trade with knowledge of that fact, they would find for defendant. If it was sought to hold Cabaness liable upon the warranty, then this charge would have been proper, for Cabaness testified that he refused to warrant the number of cattle, and the bill of sale executed by him contains no warranty; but Holland's case was not based upon any such theory. The cause of action asserted by him was that Cabaness had perpetrated a fraud upon him by false and fraudulent representations concerning the number and quality of the cattle. If it could be conceded that he had refused to warrant the number and the quality of the cattle, that would not absolve him from responsibility for the fraud that he perpetrated in falsely representing their number and quality, and thereby misleading Holland. This charge ignores that branch of the case, consequently there was no error in the court refusing to give it.

Under the facts in the case it was proper to refuse the second charge requested. This charge loses sight of the fact that Cabaness referred Holland, for true information as to the number and quality of cattle, to Smith. There may be evidence coming from Cabaness tending to show that he made no distinct representations concerning the number and quality of cattle, and that his statement concerning that matter was simply based upon information received from other sources and not upon his own knowledge; but if this had been true, and he referred Holland to a source from which he could gather correct information, Holland, acting upon that direction and relying upon the information received from this source, which the evidence shows was the case, Cabaness would be bound, although he himself made no positive statement concerning the condition and quality of the cattle. This theory is not covered by the

charge. This charge, if it had been given, would have authorized the jury to find for the defendant, notwithstanding the fact that Cabaness' agent, Smith, the party to whom he referred Holland, deceived and misled Holland by the false representations he made concerning the cattle.

The appellant in his twelfth assignment of error complains of the refusal of the court to give the following charge: "The defendant asks the court to charge the jury that if they believe from the evidence in this case that the plaintiff Holland went to Mitchell County in May or June, 1890, and there met one J. T. Beall, who then told him that the 7C or Cabaness cattle in that county were not as numerous and did not consist of the kind or classes of cattle as it is alleged by said Holland that Cabaness represented them to be; and that after receiving such information from said Beall or anyone else, instructed said Beall to sell all or any part of said cattle, then and in that event you will find for the defendant."

There was no error in refusing this charge. It conclusively assumes that because Holland in May or June, 1890, after a discovery of the fraud, instructed Beall to sell the cattle, that he elected to retain the cattle and waived the fraud. An instruction to sell the cattle after a discovery of the fraud, without an actual sale, does not conclusively establish a waiver, and an instruction by the court that such would be the case would be a charge upon the weight of evidence. Such fact would be admissible as a circumstance bearing on the question of waiver; but it could not be conclusively assumed that a naked instruction to sell the property would constitute a waiver of his right to hold the seller responsible for the fraud perpetrated. The evidence upon this question shows that Holland did not retain possession of the cattle, nor did he dispose of them; and that very soon after he discovered the fraud, in an interview with Cabaness, he informed him of the fraud that had been perpetrated upon him and requested Cabaness to correct the matter and to make him whole in the transaction, all of which Cabaness declined and refused to do, and the facts in this connection do not show that there was any unreasonable delay upon the part of Holland in the discovery of the fraud or in notifying Cabaness of that fact and in bringing suit to rescind the transaction.

There are several assignments of error to the effect that because J. H. Holland conveyed to McDowell & Peyton 100 acres of the 350 that they received from plaintiff Holland, he, J. H. Holland, would have an interest in the cattle in controversy, and that the transaction could not be rescinded unless he was a party.

It is true that J. H. Holland was not a party plaintiff to the original suit, but he became a party after the death of S. W. Holland, and in the supplemental petition by which he became a party he adopted the pleadings that had been filed by the original plaintiff, S. W. Holland. This made him virtually a party to the suit, and his connection with it would estop him from ever asserting any further litigation concerning this matter, and any judgment rendered would be conclusive and binding upon him. If he was content that the trade between S. W. Holland and Caba-

ness should be rescinded without a judgment in his favor for the amount of the consideration furnished by him, it is a matter of which the defendant can not complain. J. H. Holland was a party to the suit and to the judgment rendered, and if he saw fit not to ask any separate relief in his behalf it did not affect any interest or right of the defendant, as J. H. Holland was conclusively bound by the judgment rendered.

The appellant requested a charge to the effect that if he in good faith referred the plaintiff to Nat Smith for information concerning the cattle, and Smith falsely misrepresented their condition, he would not be bound. The court refused to give this charge, and in this connection the defendant also complains of the charge of the court wherein the jury were instructed that defendant would be responsible for the false information furnished by Smith. There was no error in refusing the charge requested, nor was there error in the instruction given by the court. According to the uncontroverted evidence in the record, Smith was pointed out to Holland by Cabaness for correct information concerning the cattle; and however innocent Cabaness may have been in the transaction, he would be bound by the representations made by Smith, because he voluntarily selected Smith as the medium through which information should be furnished to the plaintiff concerning the cattle.

The charge complained of in the twentieth assignment of error is not on the weight of evidence. It does not assume that misrepresentations were made to Holland, but it leaves that question for the determination of the jury; and it is not a correct proposition of law to say that a rescission can not be based upon innocent misrepresentations concerning the character and quality of property, which are relied upon, and which are material, and which induced the plaintiff to act in consummating the trade. Pendarvis v. Gray, 41 Texas, 326.

A misrepresentation concerning a fact which is important and which is represented as true, although innocently made, if acted upon by the plaintiff, may be the ground for a rescission. The mala fides of the party making the representations or the knowledge of their falsity is simply an aggravation of the situation, but is not solely selected by a court of equity as the only instance in which relief will be granted.

The appellant insists that the judgment can not be maintained, because Holland did not demand a rescission of the trade before suit was filed. This we believe is an incorrect conclusion reached from the evidence. It is true that Holland did not formally, in terms, demand of Cabaness a rescission of the contract; but soon after a discovery of the fraud he informed Cabaness of the falsity of the representations made to him and insisted that he be made whole in the transaction. Cabaness declined and refused to do anything in the matter; thereupon Holland instituted this suit to rescind. This was tantamount to a proffer to rescind. The absolute and unqualified refusal of Cabaness to do anything in the premises relieved Holland from making any further formal demand for rescission or tender of the property before suit. In fact this question

was in effect passed upon adversely to the appellant in the former appeal of the case. His petition did offer a reconveyance back of the cattle to Cabaness.

These are all the errors that we deem it important to consider.

We find no error in the record, and the judgment is affirmed.

*Affirmed.*

Writ of error refused.