CENTRAL BANK & TRUST CO. OF HOUS-
TON v. HILL et al.

(Court of Civil Appeals of Texas. San Antonio. Nov. 5, 1913. Rehearing Denied Nov. 26, 1913.)

1. PRINCIPAL AND SURETY (§ 125*) — EXIST-
ENCE OF RELATION.

One who indorsed his name on the back of a note before delivery intending to become a surety thereon, as the payee knew, was a surety within Rev. Civ. St. 1911, arts. 6329, 6330, entitling a surety to require the creditor to sue on a contract for payment of money when the right of action accrues, and discharging the surety if suit be not brought to the first or second term of court thereafter.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 312–328; Dec. Dig. § 125.*]

2. BILLS AND NOTES (§ 422*)—PRINCIPAL AND
SURETY (§ 123*)—WAIVER OF PROTEST.

A provision of a note that each surety and indorser waives notice, protest, and presentation for payment fixed the liability of a surety or indorser upon nonpayment without protest as effectually as a protest would have done.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1196–1208; Dec. Dig. § 422;* Principal and Surety, Cent. Dig. §§ 304–311; Dec. Dig. § 123.*]

3. PRINCIPAL AND SURETY (§ 126*)—NOTICE
OF DEFAULT—RIGHTS OF SURETY—WAIVER.

A provision in a note that each surety or indorser waived notice, protest, and presentation for payment would not deprive a surety of his right to compel the payee to bring suit upon the note when due, by notice under Rev. Civ. St. 1911, art. 6329, requiring him to sue within the time specified by article 6330.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 329–351; Dec. Dig. § 126.*]

4. APPEAL AND ERROR (§ 1010*)—FINDINGS
OF COURT—CONCLUSIVENESS.

Where the case was left to the trial judge under an agreement that he should instruct a verdict, the appellate court must find the facts to uphold the judgment, if there is any evidence to support such a finding, even though it might itself have decided the facts otherwise.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3979–3982, 4024; Dec. Dig. § 1010.*]

5. PRINCIPAL AND SURETY (§ 126*) — DIS-
CHARGE OF SURETY — FAILURE TO BRING
SUIT.

If the principal obligor is actually or notoriously insolvent, it is not necessary to bring suit to the first or second term of court after

notice by a surety requiring suit to be brought, given pursuant to Rev. Civ. St. 1911, arts. 6329 and 6330, in order to fix the liability of an indorser; nor is it necessary to fix liability by protest.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 329–351; Dec. Dig. § 126.*]

**6. PRINCIPAL AND SURETY (§ 126\*) — DISCHARGE OF SURETY — REQUEST TO BRING SUIT—FAILURE TO MAKE REQUEST—INSOLVENCY OF PRINCIPAL.**

Rev. Civ. St. 1911, art. 6336, provides that no surety shall be sued unless joined with his principal or judgment is previously rendered against the principal, except as provided by article 1843, which permits the surety to be sued without suit against the maker or principal obligor when a nonresident. Article 6329 provides that when the right of action has accrued a surety may require by written notice the creditor or obligee to forthwith sue upon the contract, and article 6330 provides that, if the creditor fail to sue at the first or second subsequent terms of court, the surety giving such notice shall be discharged from liability. *Held* that, even though the maker was insolvent, a surety on a note, who gave notice under article 6329, was discharged unless suit was brought by the payee against all parties as to whom the relation of suretyship existed, unless suit was excused under article 1843.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 329–351; Dec. Dig. § 126.*]

**7. PRINCIPAL AND SURETY (§ 104\*) — DISCHARGE OF SURETY—EXTENSION OF TIME OF PAYMENT.**

An extension of time of payment of a note granted by the payee to its president, who was not himself a party, but who was alleged to be a comaker, was not binding upon the surety and principal so as to discharge the surety, since either the surety or principal could have paid the note notwithstanding such agreement.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 186–190, 193–195, 197–199, 200; Dec. Dig. § 104.*]

**8. EVIDENCE (§ 215\*) — ACTIONS — ADMISSION OF EVIDENCE.**

In an action on a note, a letter from the president of the payee to one claiming to be a surety was admissible to show the payee's knowledge, through such president, that the surety was a mere surety and not a principal.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 754–759; Dec. Dig. § 215.*]

Error from District Court, Harris County; Norman G. Kittrell, Judge.

Action by the Central Bank & Trust Company of Houston, Tex., against J. H. Hill and A. E. Masterson. Judgment for defendant last named, and plaintiff brings error. Affirmed.

C. R. Wharton and T. H. Botts, both of Houston, for plaintiff in error. Presley K. Ewing and A. R. Masterson, both of Houston, and Masterson & Rucks, of Angleton, for defendant in error.

MOURSUND, J. Plaintiff in error sued J. H. Hill and A. E. Masterson as makers of a promissory note for $6,000, dated December 23, 1909, due 90 days after date, payable to the order of plaintiff in error. It was alleged that Masterson, before the delivery of the note, indorsed his name across the back

thereof, obligating and binding himself to pay the note according to its terms and effect, and that the note was the joint and several obligation of both defendants.

Hill answered formally, and Masterson answered, in substance: That after Hill had executed the note sued on to the order of plaintiff, which he did at the special instance and request of Pye, its president, then actively engaged as such in representing it, defendant, being thereunto requested, indorsed said note without any consideration whatever, and as an accommodation party only for the purpose of accommodating by loan of his credit, such note to be provided for and paid at its maturity independent of him, and he was in fact merely surety for its payment, as agreed between him and the principals thereof, of all which plaintiff had due notice before said note was delivered or accepted by it, and afterwards, and consented thereto. That when plaintiff's right of action on the note accrued, Masterson required it by notice in writing forthwith to institute suit upon said note, but plaintiff, though not under legal disability, failed to bring suit thereon to the first term of court thereafter, or even to the second. That by the terms of the note Hill was the maker thereof as to Masterson, but Pye, though not a party to the note, was also a principal as to Masterson, whom plaintiff knew to be a surety only as to both of said parties; yet notwithstanding such knowledge, after the note matured, plaintiff agreed with Pye, without Masterson's consent, to grant, and did grant, a definite extension of 30 days for its payment under Pye's assurance that he would pay the same in that time, or such a matter, which extension was for a valuable consideration, plaintiff securing an interest-bearing investment for that length of time, and Pye obtaining forbearance for such time. That by reason of such fact Masterson was discharged.

By supplemental petition plaintiff demurred to Masterson's answer and pleaded: that Masterson was a joint maker of the note; that the note contained the following recital: "Each maker, surety and indorser hereon hereby waives grace, notice, protest and presentation for payment." That if Pye had notice of the matters alleged in Masterson's answer, his interest was adverse to that of the bank, and notice to him was not notice to the bank, nor did his acts bind the bank, and the matters pleaded as having been said and done by him were not such as he could lawfully do as president or representative of the bank, but were done to further his own interests and against the interest of the bank. That the effort to show that Pye was an undisclosed principal or maker of the note was an attempt to vary the terms of the note.

After the evidence was concluded, the following agreement was made in open court

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

between the attorneys: "The attorneys for the plaintiff, the Central Bank & Trust Company of Houston, Tex., and the attorneys for the defendant A. E. Masterson, in open court agree that, upon the evidence adduced, the court should give a peremptory instruction on the issues between plaintiff and such defendant; the attorneys for the former claiming that the peremptory instruction should be in its favor, and the attorneys for the latter claiming that the peremptory instruction should be in his favor." The court instructed a verdict against Hill, and under said agreement instructed a verdict for Masterson in the following language: "The court is of opinion as it views the evidence that the law is for the defendant A. E. Masterson; therefore, you, the jury, are instructed to return a verdict in his favor." A verdict being returned in accordance with the instructions, judgment was entered thereon, from which the plaintiff appealed.

The first contention made by appellant is that the waiver contained in the note and hereinbefore set out included a waiver to have suit filed at the first or second term of court after the maturity of the note, and therefore Masterson was not released by plaintiff's failure to bring suit when requested so to do.

Article 579 of the Revised Statutes of 1911 reads as follows: "The holder of any bill of exchange or promissory note, assignable or negotiable by law, may secure and fix the liability of any drawer or indorser of such bill of exchange, and every indorser of such promissory note, without protest or notice, by instituting suit against the acceptor of such bill of exchange, or against the maker of such promissory note, before the first term of the district or county court to which suit can be brought, after the right of action shall accrue; or by instituting suit before the second term of said court, after the right of action shall accrue, and showing good cause why suit was not instituted before the first term next after the right of action accrued."

From the title "Principal and Surety" we copy the following articles:

"Art. 6329. Any person bound as surety upon any contract for the payment of money or the performance of any act, when the right of action has accrued, may require, by notice in writing, the creditor or obligee forthwith to institute suit upon such contract.

"Art. 6330. If the creditor or obligee, not being under legal disability, shall fail to bring his suit to the first term of court thereafter, or to the second term, showing good cause why he did not bring it to the first term and prosecute the same to judgment and execution, the surety giving such notice shall be discharged from all liability thereon."

"Art. 6337. The remedy provided for sureties by this title extends to indorsers, guarantors, drawers of bills which have been accepted, and every other suretyship, whether created by express contract, or by the operation of law."

[1] Masterson indorsed his name across the back of the note, intending to assume the obligation of surety, of which fact plaintiff bank had notice through its president. Masterson was therefore a surety within the meaning of the articles above copied. Williams v. Ogg & Keith Lumber Co., 42 Tex. Civ. App. 562, 94 S. W. 420. He made written request for suit to be brought as provided by article 6329. It is, however, contended that by reason of the waiver contained in the note he waived the bringing of suit, and cannot complain because suit was not brought at the first or second term of court; and in fact not until over a year after the maturity of the note.

[2] The waiver in question does not authorize any extension of the note, but merely provides that grace, protest, notice, and presentation for payment is waived. Such a waiver fixes the liability of a surety or indorser as fully as the act of protest would have done. Leeds v. Hamilton, 35 S. W. 78; Bank v. Bonner, 27 S. W. 698.

[3] If the holder neglects to protest negotiable paper, he may still fix the liability of the parties by bringing suit under article 579. This article and article 590, which provides for fixing liability by protest and notice according to the law merchant, were originally enacted by act of March 20, 1848 (Gammel's Laws, vol. 3, p. 187). The caption shows it to be an act purporting merely to prescribe the mode of establishing and fixing the liabilities of drawers and indorsers of bills of exchange and promissory notes. On February 5, 1858 (Laws 1858, c. 92), an act was approved which embraced most of the provisions now contained in the title relating to principal and surety, but the fourteenth section thereof read as follows: "Any person bound as surety upon any contract for the payment of money, or the performance of any act otherwise than by a bill of exchange or promissory note assignable or negotiable by law, when the right of action has accrued, may require, by notice in writing, the creditor or obligee forthwith to institute a suit upon the contract." Said section differed from article 6329 in that it contained the words "otherwise than by a bill of exchange or promissory note assignable or negotiable by law." It cannot be doubted that this act was passed for the purpose of giving a right to parties secondarily liable on contracts, and that it has no connection with the statutes which give the holder the right to fix liability either by suit or by protest. If liability is fixed by suit, there is no necessity for invoking the statute by which suit can be required; but, if liability be fixed by protest, it may be advisable for the surety to require suit to be brought. The statute was designed for the purpose of giving the surety a right he did

not have at common law, namely, to require suit to be brought at once by the holder of the note, and thus protect himself in the event his liability was fixed by protest instead of by suit. By executing the waiver contained in the note, Masterson placed himself in the same attitude as he would have been had the note been protested, and did not deprive himself of any rights he would have had if it had been protested. The waiver dispenses with certain steps by which liability may be fixed, and places Masterson in no worse attitude than if he had signed a note without such clause and the steps had been duly taken. We therefore conclude that Masterson was not deprived by said waiver of any rights he had under articles 6329 and 6330.

It is, however, contended that Hill was insolvent when the note became due and remained insolvent up to the time of the trial, and therefore it was unnecessary for appellant to bring suit pursuant to Masterson's request.

[4] The evidence is conflicting as to whether Hill was solvent when the note matured, and, as the case was left to the judge under the agreement that he should instruct a verdict, we are required to find the facts to uphold his judgment where there is any evidence to justify such course, even though as an original proposition we would have decided otherwise, and we accordingly find that Hill was solvent at the time the note matured and Masterson made his request for suit to be brought. But had Hill been insolvent, we do not agree with appellant in their conclusion of law that such fact would excuse the failure to file suit pursuant to request.

[5] True, it is well established that, when the principal obligor is actually notoriously insolvent, it is not necessary to bring suit to the first or second term to fix the liability of an indorser, and it is also held that, as it is not necessary to bring suit, it is also not necessary to fix liability by protest. Insall v. Robson, 16 Tex. 130; Burrow v. Zapp, 69 Tex. 476, 6 S. W. 783; Norton v. Wochler, 31 Tex. Civ. App. 525, 72 S. W. 1025; Bank v. De Morse, 26 S. W. 419; Smith v. Lumber Co., 47 S. W. 386. In the case of Insall v. Robson, 16 Tex. 130, Judge Wheeler based his holding upon section 6 of the Act of January 25, 1840 (Laws 1839–40, p. 146), which section provided that the assignor and indorser could be sued without the necessity of previously suing the drawer, maker, or obligor, when he may reside beyond the limits of the republic, or in such part of same that he cannot be reached by the ordinary process of the law or when he may be notoriously insolvent. In view of the provision it was held that, if the principal obligor need not be sued at all, it was unnecessary to sue him to the first or second term of court.

[6] Later cases base their holdings upon articles 1843 and 1897 (Statutes of 1911). It will be noticed that the suit which is required to be brought to fix liability under article 579 must be against the acceptor of the bill of exchange or maker of a promissory note, and, as article 1843 provides that in certain cases the principal obligor need not be sued at all, the courts have held that such article has the effect of ingrafting an exception upon article 579 to the effect that, when one of the contingencies mentioned in article 1843 arises, the liability of the parties to the holder becomes absolute.

Article 6336 provides: "No surety shall be sued, unless his principal is joined with him, or unless a judgment has been previously rendered against the principal, except in the cases provided for in article 1843." The word "surety" is defined in article 6337, hereinbefore copied. Article 6336 was not a part of the act of February 5, 1858, but was subsequently enacted, doubtless for the purpose of removing any question whether it was necessary to sue the principal obligor in all cases when request was made as provided by article 6329. We therefore conclude that, even when request is made, it is not necessary that the principal obligor be sued if he comes within the exceptions enumerated in article 1843. But it evidently was not intended by article 6336 to provide that no suit on the contract need be brought if request be made under article 6329. Had such been the intention of the Legislature, it could have been expressed clearly in very few words. It merely provided in view of article 6329, which required suit on the contract to be brought, if request be made, that even in complying with such request it was unnecessary to sue the principal obligor if he came within the exceptions pointed out in article 1843. It did not provide any exceptions to the rule requiring suit to be brought on the contract, but recognized the applicability of a rule of law then existing which created exceptions under which the principal obligor need not be made a party to the suit upon the contract. We have no authority to add to or take from the statute, and therefore hold that, when request is made under article 6329, suit must be brought upon the contract within the time stated in article 6330, or else the surety making the request is discharged of liability to the holder. Such suit must be against all parties to whom the person making request stands in the attitude of surety under the statute, unless suit against them be excused under article 1843. Thus the issues which must be decided when the principal is not sued will be determined at a time when the surety can readily procure evidence on the question of the principal's solvency. In this case no suit was brought until over a year after the note matured and request was made, and therefore Masterson was discharged.

The judgment must therefore be affirmed, regardless of the other assignments of error,

as none of them have any bearing upon the issue above disposed of.

[7] We are of the opinion that the judgment of the court cannot be sustained upon the additional ground that an extension was granted Pye, who was not a party to the note. Such extension was not binding upon Masterson and Hill, either of whom had the right to pay off the note notwithstanding the agreement with Pye. Benson v. Phipps, 87 Tex. 578, 29 S. W. 1061, 47 Am. St. Rep. 128; Red River Bank v. Bray (Sup.) 148 S. W. 291; Houston v. Braden, 37 S. W. 467.

[8] The remaining assignments relate to questions of pleading and evidence on the issue of extension of the note, but there is no merit in the fourth and fifth, and the sixth will not be considered. The third paragraph of the petition contains no allegation that Masterson indorsed the note for the benefit of Pye, but·merely that Pye requested him to indorse it for Hill, and thereby the plaintiff had notice that Masterson was a mere surety. The letter from Pye to Masterson was admissible to show the knowledge of plaintiff, through Pye, of the fact that Masterson was a mere surety. The sixth assignment relates to a paragraph of the pleading not copied in the assignment or statement, and not susceptible of being identified by the number of the paragraph, because paragraph 5 as copied in the transcript relates to other matters, nor can it be identified by the quoted words contained therein which we do not find anywhere in the answer.

The judgment is affirmed.