CONTINENTAL INS. CO. OF NEW YORK
v. NABORS et al.   (No. 11928.)

Court of Civil Appeals of Texas.  Fort Worth.
March 17, 1928.

Rehearing Denied April 28, 1928.

1. Insurance ⊚⇒665(3)—Evidence held to sustain finding that insured house was occupied by tenant at time of fire.

In action on fire policy, defended on ground that house insured was vacant and unoccupied for more than ten consecutive days preceding the fire, evidence *held* sufficient to sustain finding that house was occupied by tenant at time of fire.

2. Evidence ⊚⇒121(6)—Statements by missing person as to renting house and of intentions to move in house made during alleged period of unoccupancy, held admissible in suit on fire policy.

In action on fire policy, defended on ground that insured house was vacant and unoccupied for more than ten days preceding fire, statement by missing person, to whom insured claimed to have rented house, relating to what he wanted to do, when he expected to move his family, and that he was going to move batching outfit in house, *held* properly admitted as explanatory of act of renting house, which was competent and relevant.

3. Evidence ⊚⇒121(6)—Testimony that person borrowed tools, stating he had "moved in" insured house, held admissible in suit on fire policy defended for unoccupancy.

In action on fire policy, defended on ground that insured house was vacant and unoccupied for ten days preceding fire, testimony by neighbor that, at time insured claimed to have rented house to another, the man borrowed his saw and hammer to cut bed slats, stating that he had "moved in" house, was admissible, statement of moving in house being explanatory of acts and res gestæ of transaction, affording inference, if credited favorable to contention, that such person moved in house.

4. Evidence ⊚⇒100—Fact sought to be proved in case of circumstantial evidence need only refer to fact relevant to fact in issue.

In cases of circumstantial evidence, it is not necessary that facts sought to be proved should have direct reference to main issue, it being sufficient if evidence refers to fact relevant to a fact in issue.

5. Trial ⊚⇒352(5)—Special issues in suit on fire policy, inquiring whether house was vacant or unoccupied for ten days, held not duplicitous or to require charge defining both vacancy and unoccupancy (Rev. St. 1925, art. 2189).

In action on fire policy, defended on ground that insured house was vacant and unoccupied ten days preceding fire, special issues whether house was vacant or unoccupied from time family therein moved away until it was again occupied, and whether house was vacant or unoccupied for ten days before fire, *held* not duplicitous or in contravention of Rev. St. 1925, art.

2189, requiring special issues to be submitted distinctly and separately, and did not require court to charge on different meanings of words vacancy and unoccupancy.

6. Trial ⊚⇒352(1)—Special issues inquiring whether insured house was vacant or unoccupied for more than ten days held not misleading under evidence going alike to vacancy and unoccupancy.

In action on fire policy, defended on ground that insured house was vacant and unoccupied for ten days, special issues inquiring whether house was vacant or unoccupied for more than ten days from removal of family or prior to date of fire *held* not misleading under evidence showing that house was neither vacant nor unoccupied up to certain date, and that testimony as to condition of house thereafter went alike both to vacancy and occupancy, so that no distinction was required between terms.

7. Insurance ⊚⇒542(1)—Formal proof of loss as contradistinguished from "notice" of loss held required only in case of partial loss, and not total loss.

Fire policy, requiring insured to render statement within 91 days after loss, and providing that, in case of total loss, liability shall be considered, subject to terms of policy, applicable to liquidated claim, requirement of formal proof of loss refers only to cases where loss is not total, and, where jury found loss was total, formal proof of loss as contradistinguished from "notice" of loss was not necessary.

8. Insurance ⊚⇒561—Actual knowledge of insurer's adjuster, imputed to insurer, of total fire loss, rendered formal proof of loss unnecessary.

Where notice of fire loss was given to insurance company, and company's adjuster visited premises, actual knowledge of adjuster which must be imputed to company renders formal proof of loss unnecessary in case of total loss, and failure to make proof did not bar recovery, especially where proof was made a week after date required by policy.

9. Insurance ⊚⇒146(3)—Forfeiture for failure to make formal proof of loss under fire policy not providing for forfeiture is not favored.

Courts are generally reluctant to declare forfeiture of fire policy for failure to make formal proof of loss, where no forfeiture is provided in policy therefor.

10. Insurance ⊚⇒555—Formal proof of loss under fire policy may be waived.

Formal proof of loss required by fire policy may be waived.

11. Insurance ⊚⇒665(8)—Evidence that insurer's adjuster requested insured to make estimate for purpose of payment supported finding that proof of fire loss was waived.

In action on fire policy, evidence that insurer's adjuster requested insured to have estimate made of loss for purpose of paying off insured *held* sufficient to support jury finding that proof of loss had been waived, and hence refusal of insurer's request for peremptory instruction was not reversible error.

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

12. Insurance ⊚⊃646(2)—Insurer, defending fire policy for vacancy and unoccupancy of house for ten days, assumed burden of proof thereon.

Where house insured was occupied by tenant at time of issuance of policy, and presumably so continued, insurer defending suit on policy on ground that house became vacant or unoccupied for ten consecutive days assumed burden of proving unoccupancy of house, and hence instruction of placing burden on defendant of proving unoccupancy or vacancy for more than ten consecutive days after family moved out or for ten days prior to fire was not error.

13. Insurance ⊚⊃598—Insurer's plea to suit on fire policy, setting up failure to file proofs of loss in time, held plea in bar, and computation of interest from date of plea was proper.

In action on fire policy, plea that provision of policy requiring proof of loss within 91 days after filing had not been complied with, and hence that insured was not entitled to prosecute suit, was in effect a plea in bar, and hence computation of interest on amount of policy from date plea was filed was proper.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Suit by Mrs. Ruth Nabors and husband against the Continental Insurance Company of New York, in which the Investor's Mortgage Company intervened. Judgment for plaintiffs, and defendant named appeals. Affirmed.

Thompson, Knight, Baker & Harris and Pinkney Grissom, all of Dallas, for appellant.

Templeton & Templeton and T. W. Dunn, all of Fort Worth, for appellees.

CONNER, C. J. Mrs. Ruth Nabors, joined by her husband, E. J. Nabors, instituted suit to recover upon a policy of insurance issued by the Continental Insurance Company of New York, covering a dwelling house owned by Mrs. Nabors, and situated at 705 Louisiana street, Fort Worth, in the sum of $2,500. The policy was issued on February 9, 1925, and extended for a period of one year thereafter. A mortgage clause was attached to the policy in favor of R. J. Newton, trustee, for the Investor's Mortgage Company, as its interest might appear. It was alleged that on July 19, 1925, the insured dwelling house was totally destroyed by fire.

The defendant insurance company defended, first, by what it terms a plea in abatement, alleging that the plaintiff had not submitted to the defendant, within 91 days after the fire, sworn proof of loss, setting forth the information required by the terms of the policy; and, second, that the policy provided that it should be void if the building insured, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied, and so remain for 10 days, and that said building became vacant and unoc-

cupied for at least 10 days before the fire, without the knowledge or consent of appellant.

The Investor's Mortgage Company intervened, and set up its right under the policy, and the plaintiff replied to the company's defenses with a general demurrer, a plea to the effect that the failure, if any, in making the proper proof of loss (which was denied) had been waived by the adjuster and other officers of the company.

The house in question was situated at 705 Louisiana street on a lot facing west. Louisiana street extends north and south; Hattie street extends east and west, crossing Louisiana street at right angles. The corner lot, also owned by plaintiff, at the intersection of the two streets was vacant and unimproved. The house in question was on the lot immediately south of the vacant lot. It is unquestioned that the house involved was owned by Mrs. Nabors, and that it was occupied by tenants until vacated by a Mr. Cunningham and his family on the 3d day of July, 1925. The fire, which plaintiff alleged totally destroyed her building, occurred on the early morning of July 20, 1925.

The policy insured Mrs. Nabors for the term of one year from the 9th day of February, 1925, to the 9th day of February, 1926, to an amount not exceeding $2,500 "to the following described property while located and contained as described herein and not elsewhere, to wit: $2,500. On the one-story shingle roof frame building and additions attached thereto, including the heating and lighting apparatus and all permanent fixtures, while occupied by tenant and not otherwise, as a dwelling and situated as follows: 705 Louisiana street, Fort Worth, Texas, being lot No. ——, block No. ——, map page ——, file No. ——."

The policy by its terms was made subject to a number of conditions and warranties, among which appear the following, which was pleaded specially by the insurance company in its defense, to wit:

"This entire policy shall be void if the building herein described, whether intended for occupancy by owner or tenant, be, or become vacant, or unoccupied, and so remain for 10 days."

The policy further provided that, in case a fire occurred, the insured, among other things, should within 91 days render a statement to the company, signed and sworn to by the insured, stating the belief of the insured as to the time and origin of the fire, the interest of the insured, the amount of loss, etc.

With the foregoing preliminary statements, about which there is no controversy, the case, upon the testimony as a whole, was submitted to the jury upon special issues, in answer to which the jury found, in substance, as follows:

⊚⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"(1) That the insured building was burned to such an extent as to render it a total loss under the terms of the policy.

"(2) That the house in question was occupied by a tenant after the Cunningham family moved out.

"(3) That the insured dwelling house was not vacant or unoccupied for more than 10 consecutive days from the time the Cunningham family moved away and left it until it was again occupied.

"(4) That the insured dwelling house was not vacant or unoccupied by a tenant for more than 10 consecutive days just prior to the date of the fire.

"(5) That defendant's adjuster soon after the fire requested the plaintiff to have made and sent to the defendant company's agents an estimate of what it would cost to rebuild the house.

"(6) That defendant's adjuster told Mrs. Nabors that he wanted such estimate, so that the company could pay the loss by the fire.

"(7) That, in response to the request of the adjuster of the defendant, the plaintiff caused such an estimate to be made and delivered to the defendant's local agents.

"(8) That the defendant's adjuster by his conduct induced the plaintiff to believe that said loss would be adjusted and paid without making a formal proof of loss.

"(9) That the cost of replacing with new material the damage caused by the fire is the sum of $2,542.96.

"(10) That the new material used in replacing the damage caused by the fire should be subjected to a depreciation of the sum of $400.

"(11) That a reasonably prudent person uninsured in rebuilding the house described in the policy sued on would not use the remnants of the structure standing after the fire as a basis for restoring the building to the same condition in which it was before the fire occurred."

Based upon the verdict, the court, on February 25, 1927, rendered his judgment in favor of the plaintiffs against the defendant insurance company in the aggregate sum of $2,699.18, with all costs of suit, and provided that the Investor's Mortgage Company had an interest in said judgment to the extent of $1,200, which, when paid by the defendant insurance company, should be credited on the amount of the judgment rendered in favor of the plaintiffs; to which judgment the defendant insurance company excepted, and has prosecuted its appeal to this court.

It is first insisted that the court erred in refusing to give to the jury the peremptory instruction to return a verdict for the defendant which was duly requested. While, perhaps, in some measure conflicting, the evidence undoubtedly is sufficient to sustain the findings of the jury to the effect that the building in question was burned to such an extent as to render it a total loss under the terms of the policy. Indeed, we do not find that this finding is questioned by appellant. The closely contested and most material of the questions presented in various forms on this appeal arise under the second, third, and fourth findings. It is insisted with much earnestness and force that the insured dwelling house was in fact vacant and unoccupied for more than 10 consecutive days from the time the Cunninghams moved away until it was again occupied by a tenant.

The statement of facts has been carefully examined and considered, and therefrom it appears in substance and effect that a Mrs. Gentry, Mrs. J. L. Wooly, Mrs. I. A. Stillman all remembered the fire, and testified that to the best of their knowledge the house was vacant and unoccupied from the time the Cunningham family moved therefrom until the fire. Mrs. Gentry at the time was living on the same side of the street, facing west, a large house intervening. Mrs. Wooly lived directly opposite the burned house on the other side of the street. Mrs. Stillman lived the next door to Mrs. Gentry, two houses intervening. These witnesses all had a clear view of the front of the house in question, placed themselves in position to observe, remembered the fact of the Cunninghams' removal, and all testified that thereafter no one to their knowledge moved in, and they thought they would have so noticed had such been the case. On cross-examination, however, each acknowledged that a person could have entered and occupied the back part of the house after the Cunninghams' removal without her knowledge. In behalf of the defendant, it was also shown that both the water and light meters were removed from the house on the 25th day of June, 1925.

In opposition to the foregoing testimony, there was testimony to the effect that the Cunninghams, on the 25th day of June, 1925, left for a trip to Galveston, leaving, however, all their household effects in the house; that they returned on the 2d day of July, 1925, remained in the house that night, and the next day removed therefrom, taking all their effects, thus leaving the house wholly vacant and unoccupied. The plaintiff Ruth Nabors testified that she rented the house on the 11th day of July to a man who said his name was Ellis; that Ellis said that he wanted the vacant lot for a watermelon and ice cream stand, or something of the kind, and then paid the rent for one-half month, and stated that he would move a "batching outfit" in, and stay until he sent for his family, when he would pay the balance of the rent; that was agreed to. In all this Mrs. Nabors was corroborated by her husband, Mr. Nabors, who also testified that he had never seen Ellis before, nor been able to find him since.

Mrs. Damron testified that she and her husband lived on Hattie street immediately behind the house in question; that her house faced north on Hattie street, the "rear being some 15 feet from the other; that there was some one there at that house at night after the Cunninghams moved out. * * * There was one bedroom and a kitchen on the back of that house next to my sleeping porch. * * * We slept on the sleeping porch,

and we would have a pretty good view of the people going in and out. It was not very long after the Cunninghams moved out before I noticed these people. I could not say that they slept in this house, but I know that they were there because the lights annoyed us. * * * I never saw any one around it in the day time much. * * * I could hear people over there hammering at night. * * * Other people were over there the next day after the fire, and there was a mattress and quilts there."

W. F. Damron, the husband of the preceding witness, testified substantially as did his wife; that, while he did not see any one in the place, he was "positive that there was some one there."

Mr. Jack Sullivan testified to the effect that he visited the house soon after the fire, and that the back part was burned out. The only thing he saw in the house was a comfort lying on the floor.

D. E. Grammer testified that he lived on Hattie street next to Mr. and Mrs. Damron; that, after the Cunninghams moved out, "there was a fellow come to my house and borrowed my saw and hatchet to cut some bed slats, and told me he had moved in there."

A Mr. Arthur Brown testified that he helped the Cunninghams move out on the 3d day of July, 1925.

[1] We think the evidence sustains the findings that the house was occupied by a tenant at the time of the fire.

[2] It is also urged that the court erred in admitting, over appellant's objection, the statements of the man named Ellis, to whom Nabors and wife testified they rented the house on the 11th day of July, relating to what he wanted to do, when he expected to move his family; that he was going to move a "batching outfit" in the house, etc. It seems evident that the controlling question in this case is whether or not the burned house was vacant or unoccupied for ten consecutive days immediately preceding the fire. Mr. Nabors, one of the plaintiffs, testified to the effect that he endeavored to find the man to whom he had rented the house on the 11th day of July, and failed to learn of his whereabouts, and therefore the plaintiffs sought to supply the more direct testimony of the renter by circumstances. This it was competent to do.

In Wells v. Fairbank, 5 Tex. 584, it is said:

"Great latitude is justly allowed by the law, to the reception of indirect or circumstantial evidence, the aid of which is constantly required to remedy the want of direct evidence. In the absence of direct evidence, that which conduces, in any degree, to establish a material fact, alleged, is in general, admissible."

This is quoted with approval in the case of Goldman v. Blum and Heidenheimer, 58 Tex. 630, where it is further said:

"Any fact may be submitted to a jury, provided it can be established by competent means, which affords any fair presumption or inference as to the question in dispute."

Hence we think it clearer that the fact that Ellis, as we shall call him, rented, within the 10-day period immediately preceding the fire, the house in question, with the avowed intention of moving in, was competent and relevant to the main fact. If so, what he said and did explanatory of his act in renting was admissible as a part of that transaction. See Goldman v. Blum and Heidenheimer, 58 Tex. 630; Mary O'Neil v. Wills Point Bank, 67 Tex. 36, 2 S. W. 754; Thomas Presley v. State, 30 Tex. 160; Lunn v. Scarborough (Tex. Civ. App.) 35 S. W. 508; Smith v. Richardson Lumber Co. (Tex. Civ. App.) 47 S. W. 386.

[3, 4] What we have said in the preceding paragraph in disposing of the objections to the declarations of Ellis applies as well, we think, to the objections to the testimony of the witness D. H. Grammer, to the effect that on or about the time Ellis is said to have rented the house a man borrowed his saw and hammer to cut bed slats, stating that he had moved in the house, etc. In cases of circumstantial evidence it is not necessary that the fact sought to be proved should have direct reference to the main issue. It is sufficient if the evidence refer to a fact relevant to a fact in issue. Hunter, Evans & Co. v. Phil. Lanius, 82 Tex. 677, 18 S. W. 201. The statement of the person borrowing the saw, etc., that he "had moved in" the house, was explanatory of his acts and res gestæ of that transaction, and, when considered with the testimony of other witnesses that the house was lighted at nights, etc., afforded, if credited by the jury, an inference favorable to the contention of the plaintiffs that the person to whom they had rented the house at once moved in.

Appellant also assigns error to the court's charge in several particulars. Appellant insists that the terms "vacancy" and "unoccupancy" have different meanings; that it has a defense under each, and hence that special issues Nos. 3 and 4, as submitted by the court, are duplicitous, in contravention of article 2189, Rev. Statutes of 1925, which declares that special issues shall be submitted "distinctly and separately." The distinction urged is thus stated in the case of Southern National Ins. Co. v. Cobb (Tex. Civ. App.) 180 S. W.155:

"The usual distinction drawn between vacancy and a cessation of occupancy is that the first is used to indicate the removal of furniture and individuals from a house, and the other a change of the uses of the building. Insurance Co. v. Brady [Tex. Civ. App.] 41 S. W. 513; Insurance Co. v. Cobb [Tex. Civ. App.] 163 S. W. 608. Under the weight of authority 'vacant' means entire abandonment, deprived of contents, empty. 'Occupied' implies an actual use by some person or persons, of such character as ordinarily pertains to the purpose to which the

building is adapted or devoted. Cooley, Ins. Briefs, pp. 1663, 1664."

As submitted, special issues 3 and 4 are as follows:

"(3) Question: Was the house in question vacant or unoccupied for more than ten consecutive days from the time the Cunningham family moved away and left it until it was again occupied, if it was occupied, by a tenant? Ans. No.

"(4) Question: Was the house in question vacant or unoccupied by a tenant for more than ten consecutive days just prior to the date of the fire? Ans. No."

[5, 6] As we construe these issues, neither is duplicitous nor in violation of the statute. The terms "vacant" and "unoccupied," as used in special issue No. 3, are to be read as synonymous—as intended to elicit a finding of whether or not the house was wholly devoid of occupancy by either tenant or household effects—and was doubtless so understood by the jury, while special issue No. 4 plainly inquires whether the house was occupied by a tenant. We have examined several cases holding special issues unobjectionable that seem more liable to the criticism. See Houston, E. & W. T. Ry. Co. v. Hough (Tex. Civ. App.) 260 S. W. 233; Texas Electric Ry. Co. v. Jones (Tex. Civ. App.) 262 S. W. 131; Sutton v. Morehead (Tex. Civ. App.) 227 S. W. 558. Moreover, in no view of the case, as we view it, can it be reasonably said that the form in which special issues 3 and 4 were submitted is material or could have confused or misled the jury. It is undisputed that the house in question was occupied by tenants until the Cunninghams went to Galveston, on June 25, 1925, leaving their household effects; that they returned on July 2, 1925, and moved out on the next day, July 3, 1925. It is further unquestioned that the appellees on July 11, 1925, rented the house to a person calling himself Ellis, and that the house was burned on the morning of July 20th. It thus appears that at no time from the date of the insurance until July 11, 1925, was the house either vacant or unoccupied, and the testimony offered to show that it was otherwise between July 11th and the date of the fire goes alike to both vacancy and unoccupancy, so that we see no reason why force should be given to the distinction between the terms "vacancy" and "occupancy" in the present case. If correct in this conclusion, the failure of the court to give proper definitions of those terms could not have worked injuriously to appellant.

It is urged that proper proofs of loss as provided by the policy had not been made, and that the plaintiffs were not entitled to recover for this reason. The policy provided that it was made subject "to conditions printed on the back." As introductory and preliminary to the specification of the conditions referred to, it is recited that:

"In case there be a total loss by fire of any real property insured by this policy, as to such real property so totally destroyed, if a liability shall exist hereunder for such loss, it shall be held and considered, subject to the terms of this policy legally applicable to be a liquidated demand under article 4874, Revised Civil Statutes of Texas, against this company for the full amount hereof covering such real estate."

[7-9] Immediately following, it is provided that "in all other cases" the company shall not be liable beyond the "actual cash value" of the property destroyed, and, as we read the policy, the requirement of formal proof of loss is given in connection with, and has reference to, cases of personal property and real property, where the loss is not total. The jury having found upon sufficient evidence that the loss in the present case was total, it would seem to follow that formal proof of loss, as contradistinguished from "notice" of the loss as also provided by the policy, is not necessary. Moreover, notice of the loss was given the company, in answer to which the company's adjuster visited the premises soon after the fire, and thus, then, must have acquired full knowledge that the loss was total. It does not appear that any other fact required by proof of loss material to the company's defense existed; hence the actual knowledge of the adjuster, which must be imputed to the company, rendered formal proof of loss an idle ceremony. To this we will add that appellee in fact made out and had forwarded to the company proof of loss 7 or 8 days after the date required by the policy, so that the only merit in the failure pleaded is that the proof came too late, for which no forfeiture was provided in the policy, and the courts are generally reluctant to declare a forfeiture on this ground alone. See 26 Corpus Juris, p. 373, par. 480; Sun. Ins. Co. v. Mattingly & Ricketts, 77 Tex. 162, 13 S. W. 1016; Fire Association of Philadelphia v. Richards (Tex. Civ. App.) 179 S. W. 926. It may be said that in the cases of Fire Association of Philadelphia v. Strayhorn, 211 S. W. 447, by section A of our Commission of Appeals, and Delaware Underwriters v. Brock, 109 Tex. 425, 211 S. W. 779, by our Supreme Court, expressions are to be found to the effect that in all cases proof of loss as provided in the policy is a prerequisite to a recovery. A reading of the opinions, however, indicates, as we think, that in neither case was the evidence, as here, substantially unquestioned that the loss was total and constituted a liquidated demand by virtue of our statute relating to the subject. It seems, particularly in the latter case, by the Supreme Court, that the necessity for proof of loss was announced while determining the proper date from which to compute interest; the policy providing that it was payable 60 days after proof of loss had been furnished. We do not construe these opinions as holding that in cases where the property is real property and

the loss is unquestionably total, formal proof of loss is a condition precedent to recovery, certainly not for a mere delay in making such proof.

[10] There is yet another and all-sufficient reason why the court would not have been justified in giving appellant's requested peremptory instruction on the ground that the plaintiffs had failed to make formal proof of loss, as required by the terms of the policy. No authority need be cited to sustain the proposition that such proof may be waived, and this issue was distinctly raised in the pleadings and testimony of the plaintiffs. There was testimony to the effect that at the time of the visit of the adjuster he requested Mrs. Nabors to have a carpenter make an estimate of the loss "for the purpose of paying" her off.

[11] We think the evidence relating to the subject tends to show and is sufficient to support the jury findings in answer to special issues 5, 6, 7, and 8, to the effect that proof of loss had been waived. Nor do we think the form in which those issues were submitted were materially erroneous, and hence that the court's action in refusing appellant's peremptory and other requested instructions does not constitute reversible error. East Texas Fire Ins. Co v. Dyches, 56 Tex. 565; Ætna Fire Ins. Co. v. Jackson (Tex. Civ. App.) 282 S W. 656; Occidental Fire Ins. Co. v. Fort Worth Grain & Elevator Co. (Tex. Civ. App.) 294 S. W. 953; Phœnix Ins. Co. v. Levy, 12 Tex. Civ. App. 45, 33 S. W. 992.

[12] It is urged that the court's charge on the burden of proof is erroneous. The charge is as follows:

"The burden of proof is upon the plaintiff to prove by a preponderance of the evidence (and by a preponderance of the evidence is meant the great weight of the testimony) the affirmative of special issues Nos. 1, 5, 6, 7, and 8, and upon the defendant to prove the negative of special issue No. 2 and the affirmative of special issues Nos. 3 and 4."

Under the particular circumstances of this case, the majority, at least, do not feel prepared to hold that the charge is reversibly erroneous. It is undisputed that, at the time of the issuance of the policy, the house was in fact occupied by a tenant, and, presumably, so continued. 2 Cooley's Brief on Law of Insurance, p. 1652 and following, indicates that such terms are not to be construed as a continuing warranty that it shall remain occupied, and in the policy declared upon in this case the defendant company specially pleaded and relies upon the subsequent clauses in the policy inserted as conditions which, in terms, render the "entire policy void if the building herein described, whether intended for occupancy by owner or tenant, be, or become vacant, or unoccupied, and so remain for 10 days." The defendant compa-

ny particularly pleaded this clause of the policy, and thus assumed the burden of proving the unoccupancy of the building from the date of what is termed, in briefs of appellees, as a visit of the Cunninghams to Galveston on the 25th day of June, until and at the time of the fire.

No other question materially affecting the regularity of the proceedings during the trial occurs to us, and we accordingly conclude that the court committed no error in refusing appellant's peremptory instruction for a finding in its favor, and that the evidence sustains the verdict of the jury upon which the judgment was rendered.

[13] It is finally insisted, however, that the court erred in its allowance of interest. As relating to this question, we find that the plaintiffs' original petition was filed on the 29th day of October, 1925. On December 1, 1925, defendant filed what is termed its plea in abatement and original answer. The plea in abatement is to the effect that a provision of the policy requiring proof of loss in 91 days after the alleged fire had not been complied with, and hence that the plaintiff was not entitled to prosecute the suit. This plea, we think, in effect, is a plea in bar, and the court in its judgment computed interest at the rate of 6 per cent. on $2,500 from this date, to wit, December 1, 1925. We conclude that this is proper. See Fire Ins. Co. v. Strayhorn (Tex. Com. App.) 211 S. W. 447; Delaware Underwriters v. Brock, 109 Tex. 425, 211 S. W. 779, by our Supreme Court.

For the reason stated, all propositions and assignments of error will be overruled, and the judgment affirmed.