FRANCIS M. WETHERED'S ADM'R V. HANNAH BOON.

Where an agent, in violation of the instructions of his principal, procures a headright certificate to be issued to himself as assignee instead of to his principal, he holds the title in trust for the principal ; but as to third persons who are not proved to have had notice of the contract, or of the interest of the beneficiary, and who purchase for value, the agent will be regarded as the true owner of the certificate.

If the purchaser from such agent is affected with notice, he is a trustee of the legal estate for the benefit of the principal, to the extent of the interest of the latter.

The acknowledged doctrine, in the case of an alienation by a trustee, of the trust property, contrary to the trust, is, that with notice, actual or constructive, the trust is attached to the property and the alienee becomes, *ipso facto*, a trustee. But the *bona fide* purchaser from the holder of the legal title, without notice, will be protected.

Notice is either actual or constructive. The former is where the party to be affected is proved to have had actual knowledge of the fact. The latter is where the party, by any circumstance whatever, is put upon inquiry ; which amounts in judgment of law to notice, provided the inquiry becomes a duty, as in the case of purchasers and creditors, and would lead to the knowledge of the requisite fact, by the exercise of ordinary diligence and understanding.

In a great variety of cases, it must be matter of doubt and difficulty to decide what circumstances are sufficient to put a party upon inquiry ; and each case must depend upon its own circumstances. But it is clearly settled, that vague and indeterminate rumor or suspicion is quite too loose and inconvenient in practice, to be admitted to be sufficient

Where the testimony was that the purchaser of a headright certificate, from an assignee, before making the purchase, came to the witness who knew facts enough to render it probable that said certificate had been obtained under a contract by the assignee to locate it and perfect the title for one half, and enquired of witness whether the assignee's right to said certificate was good or not, and witness feeling doubtful from what he knew, advised him to search the records of the District Court, and went with him to do so, and they searched the records where there was a judgment, on appeal from the Board of Land Commissioners, establishing the right of the assignee to the certificate, it was held that the purchaser was not bound to look further, and was not affected with constructive notice of the rights of the original owner of the headright.

Appeal from Shelby. Tried below before the Hon. Archibald W. O. Hicks.

Suit commenced January 19th, 1848, by the appellee against appellant, to recover one half of a league of land. The league was patented to the defendant as assignee of the plaintiff. There was evidence conducing to prove that the plaintiff had authorized one Harrison E. Watson to obtain her certificate in his own name as her assignee ; and that the agreement was that he should locate it and perfect the title, and then reconvey the plaintiff one half. The application for a certificate by Watson as assignee was refused by the Board of Land Comissioners of San Augustine county in February, 1838 ; he then applied to the District Court ; his application was sustained, and on the first day of May, same year, the certificate was issued to him. On the 14th of the same month, Watson conveyed the certificate to the defendant's intestate, stating the consideration to be three hundred and sixty dollars.

The evidence relating to notice was as follows : Weathered lived at Milam, about twenty miles from San Augustine, and the plaintiff lived within two or three miles of San Augustine, and about mile from the road leading to Milam. E. O. Le Grand, a witness for plaintiff, testified that he had known Hannah Boon and Harrison E. Watson ever since 1834, and F. M. Weathered ever since the winter of 1837 and 1838 ; that he knew something of a contract being made between Hannah Boon and defendant Watson concerning her headright certificate ; that witness and H. E. Watson sometime in February, 1838, applied to the San Augustine County Board of Land Commissioners—he, Watson, to prove up plaintiff's headright in the name of Hannah Boon, and witness to prove it up in the name of Hannah Chumney, (her father's name was Chumney,) both relying on the contract previously made with said Hannah ; that before Weathered claimed to have purchased said certificate, witness had heard Watson speak of making a contract with Hannah Boon concerning her head-

right ; that on the same day Watson and witness applied to the San Augustine Board of Land Commissioners to prove up plaintiff's headright, Watson said that he had contracted to prove it out for plaintiff, for which he was to get one half by locating, surveying and getting out the patent at his own expense, and proposed to witness that if witness would not appeal from the decision of said Land Board to the District Court, he would take said appeal in the name of Hannah Boon, and make witness an equal partner in his contract with plaintiff ; that before said Weathered claimed to have purchased said certificate, he came to witness to enquire whether Watsons' right to said certificate was good or not, and witness feeling doubtful from what had previously transpired between Watson and witness, he, witness, advised Weathered to search the District Court records, and witness went with him to do so ; and after having searched the records, Weathered purchased it. Witness does not recollect what was said at the time.

One witness for plaintiff testified that in the Spring of 1838 good headrights in San Augustine rated at from six hundred to one thousand dollars per league ; but he knew of their selling as low as three hundred and fifty, and even lower ; it depended upon the men who had them, and their wants. Another witness for plaintiff testified that at that time in San Augustine good headrights rated, upon an average, at about five hundred dollars ; that *wet* headrights coming out by the peck reduced the price and impaired the sale of the good ones ; witness had known them to sell for less than three hundred and sixty dollars ; about that time any amount of bad ones could have been bought for $100 each.

A witness for the defendant, who drew the papers for the sale from Watson to Weathered, stated that he recollected that Weathered paid Watson money for the said headright, the exact amount witness did not recollect ; recollected seeing the money pass between them ; Watson and Weathered were engaged about a day in making the trade. A witness for

defendant testified that he had known, in the Spring of 1838, certificates that were said to be good, to be sold for less than three hundred and sixty dollars ; he was offered for his head-right $800 in goods.

Testimony not going to the fact of notice is omitted.

*O. M. Roberts*, for appellant.

*Henderson & Jones*, for appellee.


WHEELER, J. It is admitted by the plaintiff, that Watson had authority to procure from the Board of Land Commissioners the issuance of her certificate, and perfect title to the land. If, as she alleges, by the contract he was to obtain the certificate in her name, and was not authorized to procure it to be issued in his own name and right, and the title in part remained in her, he, upon obtaining the certificate in his own name, became her trustee, to the extent of her own interest, clothed with the legal title in trust for her. The case is not materially different in principle from that of one who employs an attorney to purchase lands for him with his money and in his name ; but who, contrary to the instructions of his principal, takes the title in his own name. He holds the title in trust for his principal, who may assert his right and require the conveyance of the title to himself ; just as the plaintiff seeks to compel the holder of the legal title to convey to her in this case. As between the parties to the contract, according to the plaintiff's statement of her case, the relation between Watson and herself was that of trustee and *cestui que trust*. But as to third persons, who had not notice of their contract, or of her interest, he was the ostensible owner of the certificate in his own right. Such third persons had a right to regard him as the true owner, and to deal with him, in regard to the property in the certificate, as such. The purchaser from him for value, must be protected, unless he bought with notice of the plain-

tiff's equity. If he is affected with notice, he is a trustee of the legal estate for the plaintiff's benefit. The notice would raise a trust in him, to the extent of her interest in the land. The acknowledged doctrine, in the case of an alienation by a trustee, of the trust property, contrary to the trust, is, that with notice, actual or constructive, the trust is attached to the property and the alienee becomes, *ipso facto*, a trustee. But the *bona fide* purchaser from the holder of the legal title, without notice, will be protected.

Wethered was a purchaser for value; and the true and important inquiry in the case is that to which the counsel for the appellee has confined his argument, Was the defendant, Wethered, chargeable with notice of the plaintiff's equity? This is the question upon which the decision of the case must depend. If he was so chargeable, then he holds the legal estate in trust for the plaintiff; if not, he holds it discharged of her equities as against his vendor, Watson, whatever they may have been.

The burden of proving notice was with the plaintiff, under the issue made by the pleadings. And we have examined the record in vain to find any evidence whatever to charge the defendant with notice of the plaintiff's interest in the certificate. The circumstance relied on to affect the defendant with notice is, that he enquired of the witness, Le Grand, " whether Watson's right to the certificate was good?" Le Grand, as he says, being doubtful, from what had previously transpired between Watson and himself, advised the defendant to examine the records of the District Court, and went with him to make the examination; which being done, the defendant bought the certificate. Le Grand does not say that he communicated his doubts; but if he did, on examining the records, they found that Watson had instituted suit and established his right to the certificate in his own name as assignee. What more satisfactory evidence, it may be asked, could he have had, or desired to have, of Watson's right, than the judgment of a Court having com-

petent authority to adjudge it to him? There could be no better evidence of his right; and upon that he made the purchase. But it is said he ought to have sought for the assignment from plaintiff to Watson; and not finding it there, should have put him upon further enquiry. We think differently. There was no necessity that there should be an assignment in writing. The transfer or sale of the right might have been admitted, or proved orally upon the trial. If in writing it ceased to be of any value after the assignee had established his right by the judgment of the Court. It became thenceforth wholly worthless; there was no motive to preserve it; and it was not likely that it would be preserved. The defendant was not required to look beyond the judgment of the Court for other evidence of Watson's right; it was not at all likely that it would occur to him to do so. But it is said, why examine the records of the Court, as the certificate showed upon its face that it was issued in the name of Watson as assignee, if the object was not to find the assignment. There is no evidence that the defendant had examined the certificate; but if he had, which is probable, it did not show the action of the District Court, but only that of the Board of Land Commissioners. The fact, which the evidence discloses, that there were known to be then in existence fraudulent, or as the witness characterizes them, " wet " certificates, might well cause him to distrust the action of the Board of the Land Commissioners, though he could not the judgment of the District Court. There is not the least reason to suppose that the defendant examined the records of the District Court for any other purpose than to ascertain what its action had been upon this certificate, or that the evidence which the records furnished was not, as it might well be, entirely satisfactory as to the right of the defendant's assignor. It is suggested that the defendant might have gone to the plaintiff and ascertained from her whether she had parted with her right to her certificate. But surely that could not be required or expected of

him.  Watson showed a title from her by a judgment of the
District Court of the county of her residence.  The defend-
ant surely had no cause to suspect that a title had thus been
obtained surreptitiously, or without her knowledge and con-
sent.  There was no more occasion to inquire of her in this
case, than there is, in any case where one proposing to sell
land produces a title from the grantee duly executed and au-
thenticated, that the purchaser should seek the grantee him-
self to know whether the deed was not made upon some secret
trust which had not been discharged.  Such inquiry was never
required without there was something to cast doubt on the
title, and put the purchaser on inquiry.  Nothing of the kind
appears in the evidence in this case.  We can conceive of
nothing more perfectly natural than that the defendant should
inquire of those whom he supposed likely to know, in respect
to the title ;  and that being referred to the records of the
District Court, and having seen the evidence of title they
afforded, he should have become satisfied and made the pur-
chase, in the fullest confidence that he was getting an indis-
putable title.  We see nothing in the evidence to suggest a doubt
that such was the true state of the case.  If titles were liable
to be charged with secret or resulting trusts and dormant
equities, after so great a lapse of time, and upon evidence such
as that which is relied on to establish the trust in this case, no
one could know when he would be secure in his title.

A reference to the law of notice applicable to the case, will
suffice to place it beyond question, that there is nothing in the
evidence in this case to affect the defendant with notice of the
plaintiff's equity.  Notice may be either actual or constructive.
The former is said to exist where the party to be affected by it is
proved to have had actual knowledge of the fact ; where the
knowledge of it is brought directly home to him by the evi-
dence.  Of this there is no pretence in the present case.  Or,
there may be constructive notice, as when the party, by any
circumstance whatever, is put upon inquiry, which amounts in

judgment of law to notice, provided the inquiry becomes a duty. (Bouv. L. D. tit. Notice; 4 Kent, Comm. 179 ; Sugden on Vendors, ch. 23 ; 1 Story, Eq. Sec. 399, and notes.) "The "general doctrine is, that whatever puts a party upon an "inquiry amounts, in judgment of law, to notice, provided "the inquiry becomes a duty, as in the case of purchasers and "creditors, and would lead to the knowledge of the requisite "fact, by the exercise of ordinary diligence and understand-"ing." (4 Kent, 179.) In a great variety of cases, it must be a matter of doubt and difficulty to devise what circumstances are sufficient to put a party upon inquiry ; and each case must depend upon its own circumstances. But it is clearly settled, that "vague and indeterminate rumor or suspicion, is quite too loose and inconvenient in practice to be admitted to be sufficient." (1 Story, Eq. Sec. 400, n.) In Flagg v. Mann, et al., (2 Sumner, 551,) Judge Story said " vague " reports and rumors from strangers are not a sufficient found-" ation on which to charge a purchaser with notice of a title " in a third person.   And I think that Lord Hardwicke stated " the true doctrine, when, in Hine v. Dodd, (2 Atk. R. 276,) " he said that there ought to be clear undoubted notice ; and " that suspicion of notice, though a strong suspicion, is not " sufficient to justify the Court in breaking in upon an Act of " Parliament ; or, (as I would add,) upon the legal rights of a " purchaser." In Hine v. Dodd, cited by Judge Story, the question was whether the defendant's claim under a registered mortgage should be postponed to the plaintiff's claim under a prior judgment, upon the ground that the defendant had notice of the judgment before the mortgage was executed ; and the words of Lord Hardwicke were that " apparent fraud, or " clear and undoubted notice, would be a proper ground for " relief; but suspicion of notice, though a strong suspicion, is " not sufficient to justify the Court in breaking in upon an Act " of Parliament;" " or," (Judge Story adds,) " upon' the legal rights of a purchaser·"

These opinions were quoted and adopted by the Supreme Court of Massachusetts in the case of Buttrick v. Holden et al. (13 Metcalf, 357–8.) The same doctrine has been maintained in numerous adjudged cases. (Sugden on Vend. ch. 23, Sec. 1, 2 and notes, 7th Am. from 11th Lond. edit.; 1 Story's Eq. Sec. 399, et scq. and notes.) These references will suffice to show that there was no evidence in the present case to charge the defendant with notice of the plaintiff's equity. It is not perceived that there is a circumstance disclosed by the evidence, which was calculated to put the defendant on inquiry as to any right or equity subsisting in the plaintiff at the time of his purchase ; there is not shown to have been even a rumor of the existence of any such right or equity ; or any thing, indeed, to justify even a " suspicion of notice." We conclude, therefore, that the verdict upon this most important inquiry in the case, was wholly unsupported by evidence. In considering this question, we have gone upon the supposition that the plaintiff's case was fully made out in other respects ; upon which, however, there might, perhaps, be cause to hesitate. But we have deemed it unnecessary to examine other objections to the judgment urged on behalf of the appellant, because our opinion upon this must be decisive of the case. We are of opinion that the evidence did not authorize the verdict ; and that the Court therefore erred in refusing a new trial, for which the judgment must be reversed and the cause remanded.

Reversed and remanded.