BROOKER v. WRIGHT et ux.　　(No. 9109.)

(Court of Civil Appeals of Texas. Ft. Worth. June 14, 1919. Rehearing Denied Oct. 18, 1919.)

1. TRIAL ☞350(4)—SPECIAL ISSUES REQUIRED BY EVIDENCE.

In action to set aside a judgment based on trustee's sale of land, on ground that land was homestead and that sale was simulated for purpose of obtaining a loan, held error, in view of the evidence, to refuse to submit issues concerning defendant's actual or constructive notice that the land was a homestead, and that sale was simulated, defendant being a purchaser of secured vendor's lien note.

2. VENDOR AND PURCHASER ☞261(4) — DEFENSE OF HOMESTEAD AGAINST INNOCENT PURCHASER OF VENDOR'S LIEN NOTE.

Innocent purchaser of secured vendor's lien note may enforce it against the land, although it grew out of a simulated sale of a homestead made to raise a loan.

3. VENDOR AND PURCHASER ☞232(5, 6)—POSSESSION OF PRIOR VENDOR AS NOTICE.

A purchaser from a vendee, whose vendor remains in possession, is not bound to go beyond the deed from such vendor conveying the title, where it has been properly executed and registered.

4. VENDOR AND PURCHASER ☞284—NOTICE TO PURCHASER OF VENDOR'S LIEN NOTE QUESTION FOR JURY.

Whether purchaser of secured vendor's lien note had notice, constructive or actual, that note arose out of a simulated sale of a homestead, held for the jury.

5. VENDOR AND PURCHASER ☞261(4)—PURCHASER FROM INNOCENT PURCHASER OF VENDOR'S LIEN NOTE.

One purchasing a secured vendor's lien note from an innocent purchaser may enforce it against the land, although he had notice before the purchase that the note arose out of a simulated sale of a homestead.

6. VENDOR AND PURCHASER ☞261(4)—INNOCENT PURCHASER FROM PURCHASER OF VENDOR'S LIEN NOTE WITH NOTICE.

Innocent purchaser of a secured vendor's lien note may enforce it against the land, al-

though the person from whom he purchased it was a purchaser with notice that it arose out of a simulated sale of a homestead.

7. VENDOR AND PURCHASER ☞232(9)—DUTY TO INQUIRE OF TENANT IN POSSESSION.

The possession of a tenant of vendor's grantor, as a matter of law, merely puts proposed vendee upon "inquiry," and affects him with notice of such facts as would, by the exercise of due diligence, have brought home to an ordinarily prudent man knowledge of the real facts.

8. HOMESTEAD ☞129(2)—HUSBAND'S LIABILITY TO LIEN NOTE PURCHASER.

While trust deed and vendor's lien note arising out of a simulated sale of a homestead are void as against one having actual or constructive notice as far as wife is concerned, the husband should not be freed of liability as against purchaser of the note with constructive notice only.

Appeal from District Court, Tarrant County; Ben. M. Terrell, Judge.

Suit by Ben T. Wright and wife against J. N. Brooker. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Sam J. Hunter, of Ft. Worth, for appellant. C. R. Bowlin and Stanley Boykin, both of Ft. Worth, for appellees.

CONNER, C. J. Ben T. Wright and his wife, Mrs. Ben T. Wright, instituted this suit on the 5th day of December, 1913, in the nature of a bill of review against J. N. Brooker to set aside a judgment rendered in Brooker's favor in the district court of Tarrant county on the 7th day of June, 1913. The judgment mentioned was based upon a trustee's sale of certain lots or portion of lots in the city of Ft. Worth, at which Brooker became the purchaser, and for the possession of which Brooker had sued. The trustee's sale was by virtue of a trust deed given to secure a vendor's lien note in the sum of $1,100, given by one Magness as part consideration for the sale of said premises by the Wrights to Magness and later purchased by Brooker.

The plaintiffs in their petition undertook to show cause why said judgment in favor of Brooker should be set aside and to account for the failure of the Wrights to earlier institute their action, and further specially alleged that at the time of the purported sale of the property to Magness by them the property mentioned was their homestead; that, while the deed to Magness purported to convey the fee-simple title, in fact the transaction was simulated for the purpose of borrowing $1,000 on their said homestead; that Magness, in fact gave no money at the time, but executed the note mentioned, which, for the convenience and at the instance of W. P. Luse, had been made payable five years after date to one Price for the benefit of W. P. Luse, who advanced to Ben T. Wright the

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

desired $1,000. It was further alleged that W. P. Luse had full notice of the simulated character of the transaction, and that the appellant herein, J. M. Brooker, also had actual and constructive notice of the same before and at the time he subsequently purchased from Luse the note referred to.

The case was submitted to a jury upon special issues, and upon the verdict rendered the court entered a judgment in favor of the Wrights, setting aside the judgment of June 7, 1913, in Brooker's favor, canceling the note referred to and also the trustee's deed, and decreed title to the plaintiffs with an award of execution and writ of possession, which had been secured by Brooker under his judgment in June, 1913. From the judgment so rendered, Brooker has duly appealed.

Appellant, through his counsel has waived all assignments of error relating to the plaintiffs' asserted right to set aside the judgment. We will therefore, in our disposition of the case, notice and discuss only such matters as we deem pertinent to the issues which relate to the merits of appellees' case as presented by them and as answered by appellant.

Appellant's first complaint is of the court's action in refusing to submit the issues which relate to the merits of the controversy. In order that our conclusion may be understood it will be necessary to state the substance of the court's charge and appellant's exception thereto. Briefly stated, the issues submitted were:

(1) Whether Mrs. Wright had requested her husband to employ attorneys in the suit by Brooker which resulted in the judgment of June 17, 1913.

(2) Whether the husband, Ben T. Wright, acted upon the request of his wife, and employed attorneys and instructed them to set up the homestead right of the wife.

To both of which questions the jury answered: "Yes."

(3) and (4) Whether Mrs. Wright had authorized her husband or attorneys so employed to agree that said judgment in 1913 should be entered against her, and whether she had knowledge of the agreement by virtue of which the judgment had been entered prior to the time that she had been served with the writ of possession.

These issues were both answered in the negative.

The fifth and last special issue requested a finding of the reasonable monthly rental value of the property from the time Brooker took possession of the same up until the time of the trial.

In connection with the special issues, and in addition to the usual charges upon the burden of proof and of the right of the jury to determine the credibility of the witnesses, etc., the court gave the following further charge:

"If you find, in answer to the special issues submitted to you, that Mrs. Bessie E. Wright requested her husband, Ben T. Wright, to employ attorneys to set up and prosecute for her her homestead defenses, and that, acting upon said request, her said husband employed Slay, Simon & Wynn, and instructed them to set up and prosecute his wife's said homestead defense, and if you have further found that the said attorneys, without the authority or consent of the said Mrs. Bessie E. Wright, agreed that a judgment might be rendered against her, and if you further find that such judgment was so rendered, and that the said Mrs. Bessie E. Wright had no knowledge of the said agreement, or the rendition of said judgment, until the writ of possession was served upon her, then you will find the following verdict, to wit: 'We, the jury, find a verdict in favor of the plaintiffs against the defendant, canceling the $1,100 note in evidence, and canceling and holding for naught the sale under the deed of trust in evidence, and the judgment rendered in the Seventeenth district court in favor of the defendant against the plaintiffs, and the writ of possession, and all the pleadings in said judgment. We also by our verdict remove the trustee's deed, and the judgment and writ of possession, as clouds upon the plaintiff's title. We also vest title to the property in controversy in the plaintiffs.'"

At the same time the defendant requested, among others, the submission of the following special issues, which were refused by the court, and to which refusal the defendant excepted, to wit:

"(5) At the time J. N. Brooker bought said $1,100 note in controversy in this suit, did he or not know that the premises in question were the homestead of the plaintiffs? Answer Yes or No.

"(6) At the time he bought said $1,100 note in controversy, did said J. N. Brooker have any knowledge or information or other notice that the premises in controversy were the homestead of the plaintiffs in this case? Answer Yes or No. * * *

"(13) Is it a fact or not that J. N. Brooker paid to W. P. Luse the sum of $1,000 for said $1,100 note? Answer Yes or No.

"(14) Did the said Brooker buy said note in good faith, believing that he was getting a good title to the same, and believing that it was a vendor's lien upon the premises in question? Answer Yes or No.

"(15) Did W. P. Luse, at the time he purchased said $1,100 note, believe that he was purchasing a good title, and that it was a vendor's lien upon the land and premises in question? Answer Yes or No.

"(16) What amount did W. P. Luse pay for said note?

"(17) Did W. P. Luse have any notice, actual or constructive, at the time he bought said note from the Wrights, that the Wrights were claiming that the sale to Magness was a pretended sale of the homestead and an attempted mortgage upon the homestead? Answer Yes or No. * * *

"(20) Did J. N. Brooker, the defendant, ever find anybody in occupation of said premises at any time that he went to look at them? Answer Yes or No.

"(21) Did J. N. Brooker ever find anybody in possession of said premises, so as to make inquiry of them by what right they occupied the same, or to whom they paid the rent? Answer Yes or No."

To the court's charge, and to the action of the court in refusing the special instructions noted, the defendant duly objected and excepted, on the ground:

That the charge "stops short of presenting any issue or any charge upon the defense to the plaintiff's claim or right to recover said property back from the defendant, Brooker, thereby denying to the defendant the right to be heard by the jury on his defenses," and that "by reason of the court's action in refusing to submit to the jury the defendant's special issues, and refusing to instruct the jury, as requested by the defendant in his five special charges asked for, the court is denying to defendant, Brooker, the right to have his defenses submitted to a jury."

[1] It seems clear to us that the objections noted were well taken, and that appellant's first assignment and propositions relating thereto must be sustained. It is evident, we think, that the special issues submitted are only pertinent to that phase of the plaintiff's case directed to the effort to set aside the judgment in Brooker's favor. The verdict of the jury was in the exact wording of that paragraph of the court's charge which we have quoted, and which was submitted in connection with the special issues, and the judgment appealed from follows this verdict. The charge, verdict, and judgment can only be justified by an assumption that the evidence without dispute showed, first, that the transaction which culminated in the Wrights conveying to Magness the premises in controversy was a simulated one, as the Wrights alleged; and, second, that W. P. Luse, at the time he acquired the note referred to, had actual or constructive notice of the simulated character of the transaction, and that likewise the appellant, Brooker, had such notice at the time of his purchase of the note. The evidence has been carefully considered, and we think no such assumption can be made. Indeed, appellant insists under other assignments that the evidence shows without dispute that at least appellant, Brooker, was a purchaser of the note in question for a valuable consideration and without notice, actual or constructive, of the vice upon which the plaintiffs sought to recover.

W. P. Luse testified, in substance, among other things, as follows:

That on the occasion in question he had been approached by a man named Swofford, inquiring if he (Luse) had money to loan; that he (Luse) replied in the affirmative, if he "could get a bonus by discounting the note," and that Swofford told him where he was "making a deal to sell some parties some property, where there would be an $1,100 note to be sold, and asked me would I give $1,000 for the $1,100 note, due in three years, and bearing 10 per cent. interest"; that the next day Swofford came to him (Luse) and carried him out to look at the house; that it suited him (Luse), and he agreed to give $1,000 for the note; that in a day or two afterwards Swofford came to Luse and said that he was ready to sell the note; that the parties went to Mr. Ross to have the abstract examined, and that he (Luse) left his $1,000 with Mr. Ross, with instructions to deliver the money to "the fellow who delivered the note to him, when he was satisfied of the title being good"; that "during the pendency of the deal for the purchase of the note I did not have any information from any one as to this deal being other than a genuine one"; and that he later sold the note for $1,000 in cash to Brooker, the appellant in this case.

Mr. Ross testified, among other things, to the effect:

That he examined the abstract of title to the property in question for both Luse and Brooker; that his opinion was favorable; that Swofford appeared to be conducting the negotiations, and that Mr. Wright was in his office once or twice; that because of the recent character of the transaction he inquired of Wright and Swofford as to whether the property was a homestead or not, and "whether it was a bona fide transaction, and whether it was a simulated transaction, for the purpose of evading a homestead and obtaining a loan on the homestead"; and that "Mr. Swofford assured me that it was a bona fide transaction, that he was the agent who had conducted the sale, and knew that it was a genuine sale."

Mr. Ross testified:

"I asked Mr. Wright whether that was his homestead or not. I asked him orally and I inquired very carefully about that, because it was a recent transaction. His answer, when I asked him that, was that it was not his homestead. He said his homestead was in San Antonio, and that this was not his homestead, and I afterward required him to make an affidavit on the subject, and the affidavit was made by him, and also by Mr. Swofford. I inquired of Mr. Swofford whether it was a bona fide transaction, and he said that it was; that he was the agent in the transaction, and knew that it was a bona fide transaction, and not a simulated transaction; that it was a sale of the land; and they both stated that to me orally, and I then required them to reduce the statement to an affidavit. I afterwards examined the title again for Mr. Brooker. Assuming that that transaction was regular, I examined it from that time down to the present time, having examined it previously. I had investigated the transaction between Wright and Magness, and had become satisfied that it was a bona fide transaction."

In this connection it should be further stated that the deed to Magness was a regu-

lar warranty deed purporting on its face to convey the full fee-simple title to the premises in controversy, with the usual habendum and tenendum clauses. It was duly executed and acknowledged by both Mr. and Mrs. Wright in the usual form required in conveyance of a homestead. The deed to Magness, and the note for $1,100 payable to Price, and the trust deed given to secure the note, were all executed on the 16th day of December, 1911, and Mr. Wright testified upon the trial that at this time he and his wife and children were occupying the premises as their homestead; that Magness in fact paid nothing upon the purported purchase, and soon thereafter reconveyed the property to himself and wife; that he discounted the note in order to go into business in San Antonio, where he went in a few days, and to which place his wife and children also moved about the 10th day of January, 1912. It appears that the deed from Magness, reconveying the property to the Wrights, was not recorded; but Wright therein assumed the payment of the price note.

There was further testimony to the effect that in June, 1912, Luse became desirous of selling the note in question, and came to Ft. Worth and proposed its sale to appellant, Brooker, who purchased it, paying therefor $1,000 in cash; but before purchasing the note Brooker required an examination of the title by Mr. Ross, the same attorney who examined the title for Luse. He testified as follows:

"At the time I bought this note I did not have any knowledge or notice that the Wrights were occupying that property as a homestead. I did not know anything about it being a simulated or sham transaction for the purpose of borrowing money on a homestead. I would not have bought the note, if I had had a hint even of it. I thought it was a perfectly good title, and I bought it in good faith. Luse said he had fully examined the title—that is, the security—and said he had satisfied himself; after he went out and looked at the property, and satisfied himself as to the security, he came there and gave the money to Mr. Ross, and told him to satisfy himself as to the title, and if the title was in every way satisfactory to him to pay the note off; he gave the money to Mr. Ross, and went off and left the title to be passed on by Mr. Ross, and I bought it largely on the same conclusion; on Ross' certificate I bought it. I regarded him as one of the best land lawyers in the state, and I had a talk with him, and he said the title was good. If I had had any suspicion that it was wrong, I would not have bought it. I went further than Mr. Ross with the title; I found out that the Wrights had moved out of the property, and that a man named Briscow had rented the property, and he was paying the rents to Swofford, representing the C. N. Brooks Realty Company; that Mr. Ross told me the title was good. Briscow told me they had moved out of the property. I asked him if they had moved everything out. He said they had moved everything out; there was nothing left in the house at all; that he moved back, and took possession, and paid rent to the real estate people down on Tenth street. Briscow, told me they had moved in, and the others had moved—moved everything out and out of the country; moved to San Antonio. The title with Mr. Ross was good; the people had moved out and left the country; and I just thought if I could not loan on that kind of title—could not buy or speculate on that kind of paper—I couldn't handle no paper. I took it as absolutely satisfactory, and I had no question in my mind about it. As to hearing that Mr. Ross had talked, or examined Mr. Wright and Swofford as to whether it was a homestead, I will say Mr. Ross told me that he had talked to all parties concerned, and was satisfied, and was willing to give a perfectly clean title on it. He said he made this investigation. I went to talk to him about it, and he said, 'Luse left the matter largely with me and he satisfied himself as to the security;' and he said, 'I talked to all parties concerned, and satisfied myself the title was good, and gave an opinion on the title.'"

[2] We cannot, in view of the testimony we have quoted and to which we have referred, see how it could be assumed that there was no abandonment of the homestead, and that neither Luse nor Brooker were innocent purchasers of the note for value and without notice of the defense upon which appellees rely. If it be assumed that the transaction was a simulated one, as appellees alleged, it is nevertheless clear that, if either Luse or Brooker were innocent purchasers of the note for value and without notice, as alleged by appellant, appellees would be bound by the proceedings as they appeared. See Graves v. Kinney, 95 Tex. 210, 66 S. W. 293; Heidenheimer v. Stewart, 65 Tex. 321.

[3-5] We presume that the honorable judge must have concluded that Luse was affected with notice, as a matter of law, because of the fact that at the time of his purchase of the note appellees were in possession of the premises. This fact alone, however, under the rule announced in the case of Eylar v. Eylar, 60 Tex. 315, would not be sufficient. It was held in that case that a purchaser from a vendee whose vendor remains in possession, is not bound to go beyond the deed from such vendor conveying the title, where it has been properly executed and registered. It was there said that the sole office which possession performs in the matter of notice is to put a person desiring to purchase upon inquiry, and it has no effect in determining what the inquiry shall be, or of whom it shall be made, and that in such case the purchaser, not having notice otherwise, would have a right to rely upon the declaration of the grantors in the deed that the title was in fact in the person to whom it had been conveyed. There were some other circumstances, perhaps, tending to show that Luse had such knowledge as would put him upon inquiry,

but these circumstances were by no means conclusive, and it was at all events a matter for the jury's determination. If Luse was in fact an innocent purchaser without knowledge of the simulated character of the transaction, it cannot be doubted that Brooker in his purchase took good title to the note, free from the vice alleged by appellees, even though he, Brooker, had notice. This proposition is so well settled we deem it unnecessary to cite authorities in its aid.

[6] But if it be admitted that Luse was not an innocent purchaser, yet, if Brooker was, he is entitled to protection, as it is undisputed that he bought the note before its maturity, paid therefor a valuable consideration, and there is no sufficient evidence that he had actual notice. An effort seems to have been made in the testimony to show that the note on its face had an indorsement showing that it was a loan; but Brooker's testimony tended to show that the original indorsement had been changed, and the word "loan" written thereon, and it cannot therefore be said that the indorsement can be here accepted as conclusive evidence that Brooker was affected with notice. We think it must have been assumed by the trial judge that the fact that at the time of Brooker's purchase the premises were in possession of a Mr. Briscow, who, it was developed in the testimony, was a tenant of appellees, was as a matter of law sufficient to affect Brooker with notice of appellees' asserted rights. It is true that a distinction has been made in the cases where the possession remains with the vendor and where the possession is by a tenant of the vendor. In the latter class of cases it seems to have been held that the possession of a tenant, as a matter of law, affects a proposed purchaser with notice of the right of his landlord. See Chamberlain v. Trammell, 61 Tex. Civ. App. 650, 131 S. W. 227; Moore v. Chamberlain (Sup.) 195 S. W. 1135.

[7] But, as we understand these cases, the possession of the tenant is not necessarily conclusive on the issue of notice to a purchaser. The possession of the tenant as a matter of law merely puts the proposed purchaser upon "inquiry," and affects him with notice of such facts as would, by the exercise of due diligence, have brought home to an ordinarily prudent man knowledge of the real facts. The editor of Ruling Case Law, p. 346, § 7, thus states the rule on the subject:

"Whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand; and if he omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained. This, in effect, means that notice of facts which would lead an ordinarily prudent man to make an examination which, if made, would disclose the existence of other facts is sufficient notice of such other facts."

In Wethered's Adm'r v. Boon, 17 Tex. 143, it was said by Mr. Justice Wheeler of our Supreme Court:

"Notice may be either actual or constructive. The former is said to exist where the party to be affected by it is proved to have had actual knowledge of the fact; where the knowledge of it is brought directly home to him by the evidence. Of this there is no pretense in the present case. Or there may be constructive notice, as when the party, by any circumstance whatever, is put upon inquiry, which amounts in judgment of law to notice, provided the inquiry becomes a duty. Bouv. L. D. tit. 'Notice'; 4 Kent, Com. 179; Sugden on Vendors, c. 23; 1 Story, Eq. § 399, and notes. 'The general doctrine is that whatever puts a party upon an inquiry amounts, in judgment of law, to notice, provided the inquiry becomes a duty, as in the case of purchasers and creditors, and would lead to the knowledge of the requisite fact, by the exercise of ordinary diligence and understanding.' 4 Kent, 179. In a great variety of cases, it must be a matter of doubt and difficulty to devise what circumstances are sufficient to put a party upon inquiry; and each case must depend upon its own circumstances. But it is clearly settled that 'vague and indeterminate rumor or suspicion is quite too loose and inconvenient in practice to be admitted to be sufficient.' 1 Story, Eq. § 400, note. In Flagg v. Mann et al., 2 Sumner, 551 [Fed. Cas. No. 4847], Judge Story said, 'Vague reports and rumors from strangers are not a sufficient foundation on which to charge a purchaser with notice of a title in a third person. And I think that Lord Hardwicke stated the true doctrine when, in Hine v. Dodd, 2 Atk. 276, he said that there ought to be clear undoubted notice; and that suspicion of notice, though a strong suspicion, is not sufficient to justify the court in breaking in upon an act of Parliament, or (as I would add) upon the legal rights of a purchaser.' In Hine v. Dodd, cited by Judge Story, the question was whether the defendant's claim under a registered mortgage should be postponed to the plaintiff's claim under a prior judgment upon the ground that the defendant had notice of the judgment before the mortgage was executed; and the words of Lord Hardwicke were that 'apparent fraud, or clear and undoubted notice, would be a proper ground for relief; but suspicion of notice, though a strong suspicion, is not sufficient to justify the court in breaking in upon an act of Parliament;' 'or' (Judge Story adds) 'upon the legal rights of a purchaser.'"

In the case of Wilson v. Williams, 25 Tex. 55, the same able judge had this to say on the subject:

"Indeed, it has been said it will be a sufficient answer in all cases to the allegation of notice to show that the party to be affected by it could not have obtained the necessary information by an investigation conducted in the usual course of business. [Bellas v. McCarty] 10 Watts [Pa.] 26. And even where circumstances are brought home to the knowledge of the party, which would have been sufficient in themselves to put him on inquiry and thus amount to notice, he will be entitled to rebut the presumption of notice, which would oth-

erwise arise, by showing the existence of other attendant circumstances of a nature to satisfy the mind that further inquiry was unnecessary. [Rogers v. Jones], 8 N. H. 264. And see 2 Lead. Cas. in Eq. part 1, notes to Leneve v. Leneve; Wethered v. Boon, 17 Tex. 143."

Applying the spirit of the rule as indicated by these authorities, we think that the most that can be said of the issue as involved in this case is that it was one of fact to be determined by the jury. As will be seen from the testimony of Brooker that we have quoted, not only did Mr. Ross make inquiry which satisfied him that the transaction between the appellees and Magness was genuine, but Mr. Brooker also, before his purchase, as he testified, went to the premises and at first found no one there, but later found the tenant, Briscow, who, it appears, did not inform Brooker that the Wrights were his landlord, but, on the contrary, informed Brooker that he was paying rent to Mr. Swofford, who had originated and carried out the original transaction with the Wrights, and who, Ross testified, made affidavit to the effect that the transaction between the Wrights and Magness was what it purported to be. Under such circumstances, as stated, we do not think the trial court was authorized to assume, and, in effect, declare as a matter of law, that appellant had notice of the defect in the title, set up in answer by the appellees. The issue should be submitted to the jury, we think, to determine whether, under all of the circumstances, it was the duty of Brooker, in the exercise of due diligence, to prosecute his inquiry further. It is true that in the case of Moore v. Chamberlain, supra, it was held by our Supreme Court that the possession of tenants in that case affected one who claimed to be an innocent purchaser without notice or knowledge of a simulated transaction such as is involved in the case here. But in so holding this is what was said:

"When the plaintiff in error purchased the land from the trustee, it was in possession of the tenants of the Chamberlains. This placed him upon inquiry, as a matter of law, as to whether the deed from the Chamberlains to Carson and from Carson to Trammell were absolute, or were intended only as mortgages. There being no finding that he exercised any diligence by making inquiry, the possession of the tenants constituted actual notice to him that the deeds were intended as mortgages."

Therefrom it seems evident that the decision does not rest alone on the mere fact that possession of the premises was held by tenants. The further conclusion that there was no finding of diligence was made important, and illuminates the decision.

[8] There is another phase of the case, not adverted to in the briefs of counsel, which present a question arising upon the face of the record, and which we wish to briefly notice. It is undisputed, as we have before stated, that appellees in due form executed a deed, regular upon its face, purporting to convey the full title to the premises involved in this controversy, and in due form executed the note now held by the appellant and knowingly put it into circulation. Appellees, in effect, both admitted these facts, but assert that the transaction was a simulated one, and therefore void under the Constitution of the state. If so, both appellees knew better than any one else of the illegality of the transaction. While it may be true, and it must be so held, that under our constitutional provisions the lien evidenced by the note and deed is void and without effect as against one having actual or constructive notice of the simulated character of the transaction, yet we know of no rule of law nor of any decision going so far as to hold that under the circumstances detailed the appellee, Ben T. Wright, the husband, is free from all liability to pay the sum specified in the note. The wife may not be so held because of an inability under our law to make a contract of the kind, but as to the husband, not being under such disability, he should be held, as against one without actual notice of the vice, to the terms of his written agreement as far as may be done. To hold otherwise is to say that he may knowingly and deliberately perpetrate a fraud and interpose the constitutional provision forbidding an incumbrance of the homestead as a shield to protect him from wrong.

We conclude that there was error in the proceedings and that the judgment should be reversed, and the cause remanded for a new trial on the issues discussed in accordance with the views expressed.