## LEDBETTER et al. v. MARTINEZ.

### No. 10914.

Court of Civil Appeals of Texas. Dallas.

Feb. 20, 1932.

Rehearing Denied March 26, 1932.

See, also, 12 S.W.(2d) 1042.

House, Wilson & House, of Dallas, and Mike E. Smith, of Fort Worth, for appellants.

Smithdeal, Shook, Spence & Bowyer, of Dallas, for appellee.

VAUGHAN, J.

The record does not disclose when this suit was filed. Trial was had on appellants' third amended original petition filed April 28, 1930, by Louise Ledbetter and husband, R. L. Ledbetter, against T. H. Britton, T. B. Madison (not parties to this appeal), and appellee, Martinez, to remove the cloud from the title to and recover the possession of 80 acres of land, part of the Harvey G. Wilson survey, located in Dallas county, fully described in said petition. The following succinct review of the history of this litigation will, we think, delineate the questions presented for review:

R. L. Ledbetter was the only child of W. O. and Mrs. Ella Ledbetter, who for many years resided on a farm about ten miles southwest of Dallas, on the Cedar Hill road. This farm consisted of two distinct tracts of land, separated by approximately 1½ miles. The first

tract, consisting of 52 acres, was inherited by Mrs. Ella Ledbetter from her family; the other tract, the one in controversy, viz. 80 acres, was inherited by W. O. Ledbetter, and was used and cultivated by him in connection with the 52 acres upon which he and his wife actually resided. While at one time there had been a house of some character upon the 80-acre tract, it had never been occupied by the Ledbetters, and for many years prior to the death of W. O. Ledbetter had been in ruins.

W. O. Ledbetter died intestate during the year 1917. After his death, his widow, Mrs. Ella Ledbetter, and their son, R. L. Ledbetter, continued to reside on and use said tract of land as same had theretofore been used. R. L. Ledbetter married some months after his father's death, and he and his wife moved in with Mrs. Ella Ledbetter on the 52-acre tract, and continued to make their home with her during the events out of which this litigation arose. They cultivated both tracts of land, and pastured upon them cattle belonging both to R. L. Ledbetter and Mrs. Ella Ledbetter.

Sometime in the summer of 1920, R. L. Ledbetter met a man by the name of G. B. Pierce, and became interested with Pierce in the "oil game." In order to obtain funds for their ventures, R. L. Ledbetter at first borrowed $1,000 upon the security of a chattel mortgage on certain cattle. These funds soon being exhausted, they decided on making a fictitious sale of the 80-acre tract of land and to create a vendor's lien note to be sold for the purpose of obtaining additional funds for their oil venture. According to the testimony of appellants' witnesses, they feared that they might have difficulty in procuring the signature of Mrs. Louise Ledbetter to the deed of conveyance, if she knew the true facts, so they fraudulently represented to her that they were borrowing the money for the purpose of building her a home and paying certain outstanding debts. By this designing scheme, there was executed and properly acknowledged on September 16, 1920, what purported to be a general warranty deed from appellants and Mrs. Ella Ledbetter to G. B. Pierce, conveying the 80 acres of land. This instrument was filed for record in the deed records of Dallas county, Tex., on September 20, 1920. It recites a consideration of $12,500 cash and the execution and delivery by the grantee of a note in the principal sum of $3,500, payable to the order of R. L. Ledbetter and due three years after date, with interest at the rate of 8½ per cent. per annum, payable annually. It was further secured by deed of trust given by Pierce to James Jackson, trustee, which was later recorded in the trust deed records of Dallas county. On September 29, 1920, R. L. Ledbetter sold and conveyed the $3,500 lien note to one J. M. Cochran, who paid to Ledbetter the face of the note in full and without discount. Ledbetter used the proceeds of the note to discharge the $1,000 chattel mortgage debt, and to invest further in the oil ventures with G. B. Pierce. Cochran held Pierce's note for a little over a year, and then sold it for value to the Dallas Morris Plan Bank, and the bank in turn sold it to appellee, who paid full value therefor.

After the sale of the $3,500 lien note to Cochran, Pierce and his wife reconveyed the 80 acres to R. L. Ledbetter, by deed dated October 8, 1920, and filed for record the same day. This new conveyance recited a consideration of $18,500, of which $13,500 was in cash, the assumption of said $3,500 note, and a note for $2,500 payable to G. B. Pierce. This latter note Pierce subsequently sold to one Mrs. Orpha Turner, who in turn sold it to appellee. Martinez bought the $2,500 note prior to the time he acquired the $3,500 note from the Dallas Morris Plan Bank, under the idea that it was necessary to protect the second lien from a threatened foreclosure by the Dallas Morris Plan Bank on the $3,500 first lien.

Default having been made in the payment of principal and interest on the $3,500 lien note, after many attempts to effect collection from Ledbetter, Martinez directed the trustee, James Jackson, to exercise the powers of sale given in the deed of trust executed by Pierce; and accordingly, at foreclosure sale regularly held on May 11, 1923, the property was conveyed by the trustee to appellee for a recited consideration of $500, appellee subsequently sold the property to one T. H. Britton for a recited consideration of $16,500 in cash and notes, none of which, however, was ever paid, and on October 8, 1923, appellee reacquired the property at foreclosure sale.

This suit was instituted by appellants to set aside the deed executed by appellants and Mrs. Ella Ledbetter to Pierce, the trustee deed from Pierce to Jackson, and the trustee's deed from Jackson to appellee, and to recover the property upon the grounds usually alleged in such cases, viz.: That said 80 acres of land was the homestead of the appellants; that the $3,500 vendor's lien note, under which appellee had foreclosed said deed of trust lien, was created in a fictitious sale of appellants' homestead; and that each successive transferee of said $3,500 note, including appellee, had knowledge and notice of the infirmity in said note and deed of conveyance to Pierce at the time each acquired the note. Appellee defended the suit by denying the facts alleged by appellants, and by setting up that he and each of the previous transferees of said note were innocent purchasers for value, in good faith, and were entitled to protection as such.

In answer to special issues submitted, the jury found the following material facts, viz.: That Mrs. Ella Ledbetter, mother of appellant R. L. Ledbetter, prior to the execution of the instrument in issue (in the form of a gen-

eral warranty deed), dated September 16, 1920, relinquished to said R. L. Ledbetter her homestead rights to the involved 80 acres of land; that before and on September 16, 1920, said land was used and claimed by appellants as a part of their homestead; that it was the intention of each of said appellants at the time of the execution of said instrument dated September 16, 1920, to one G. B. Pierce as grantee, that same was to constitute a mortgage on said 80 acres of land to secure the payment of a loan of $3,500; that appellant R. L. Ledbetter and said Pierce, each prior to the execution of said instrument, represented to appellant Louise Ledbetter that same was only a mortgage on said 80 acres of land to secure a loan for the purpose of building a house on said land and paying debts of said R. L. Ledbetter; that said Louise Ledbetter believed and relied upon such representations in the execution of said instrument dated September 16, 1920; that J. M. Cochran, prior to and at the time of the purchase by him of the $3,500 vendor's lien note in issue in this case, did not have actual notice that the land described in said note was in the possession of appellants at the time he purchased said note and was then claimed by them as a part of their homestead, or that the instrument dated September 16, 1920, executed by appellants and Mrs. Ella Ledbetter to G. B. Pierce as grantee, was intended by appellants as a mortgage; that J. C. Duke or R. J. Thorn, as agents of the Morris Plan Bank, prior to and at the time of the purchase by it of said $3,500 note from Cochran, and that appellee, prior to and at the time of the purchase of said note by him from the Dallas Morris Plan Bank, each had such notice as would put an ordinarily prudent person, under the same or similar circumstances, upon inquiry to ascertain, (a) if the land in question was used and claimed by appellants as a part of their homestead on September 16, 1920, and (b) if the instrument executed by appellants and Ella Ledbetter to G. B. Pierce of date September 16, 1920, was intended as a mortgage; that the reasonable rental value of said 80 acres of land for the years 1920 to 1928, inclusive, was $300 per year.

Said findings, being amply supported by evidence adduced, are adopted by this court as its findings on material facts. On this verdict, the court below rendered judgment disposing of all issues between the parties, plaintiffs and defendants, to this suit, and in favor of appellee against appellants as follows: "That except for the right of redemption hereinafter given, the plaintiffs, Mrs. Louise Ledbetter and R. L. Ledbetter, take nothing against the defendant P. P. Martinez; * * * That subject to the right of redemption, provided for in the next succeeding section thereof, the title to the lands and prem-

ises in controversy be and it is hereby quieted in the defendant P. P. Martinez (here follows a description by field notes of the 80 acres of land); that in accordance with the tender of equity made by the defendant, P. P. Martinez, in paragraph 17 of his third amended original answer herein filed, the plaintiffs are thereby given right to redeem the aforesaid property from the said defendant by paying into the registry of this court, within 90 days from this date, the sum of $8,005.44, with interest * * * and all costs of suit, * * * but if such payment is not so made within such period of 90 days from this date, then such right of redemption shall cease and the title of the defendant P. P. Martinez in and to such property shall become absolute. * * *"

Appellants earnestly question the submission of the following special issues:

"No. 8: Did J. M. Cochran, prior to and at the time of the purchase by him of the $3,500.00 vendor's lien note in issue in this case, have actual notice that the lands described in said note was in the possession of the plaintiffs at the time of the purchase and was then claimed by them as a part of their homestead?

"No. 9: Did J. M. Cochran, prior to and at the time of the purchase by him of the $3,500.00 note in issue in this case, have actual notice that the instrument dated September 16, 1920, signed by the plaintiffs, with G. B. Pierce as grantee, was intended by grantors as a mortgage?"

—on the following grounds:

"(1) Because the term 'actual notice' places a greater burden upon plaintiffs than the law requires, as the terms notice and knowledge are not synonymous and requires plaintiffs to prove actual knowledge even though said Cochran was put upon notice which if pursued he would have ascertained the facts prior to the purchase of the note;

"(b) Because said issues place an undue burden on plaintiffs to prove actual notice, instead of such notice as would put said J. M. Cochran on such notice as would have been required of a man of ordinary prudence under the same or similar circumstances to ascertain the true situation."

Appellants, in lieu of the above special issues, requested the court to submit the following:

"Issue No. 8. Do you find from a preponderance of the evidence that J. M. Cochran prior to the purchase of the $3,500 note in question had such knowledge or notice of the use of the property in question as would put an ordinary prudent person as that term is defined to you in this charge, on inquiry to ascertain if the property constituted a part of the homestead of plaintiffs?

"Issue No. 9: Do you find from a prepon-

derance of the evidence that J. M. Cochran prior to the purchase of the $3,500 note in question had such knowledge or notice, as that term is defined to you in this charge, as would put an ordinary prudent person on inquiry to ascertain if the instrument dated September 16, 1920, was intended as a mortgage?"

We are of the opinion that the court did not err in the respect complained of. The note involved was executed by Pierce, payable to the order of R. L. Ledbetter. Ledbetter transferred same to Cochran, before maturity for value; and, unless at the time Cochran so acquired the note he had actual notice of the vice in the execution of the instrument of date September 16, 1920, a simulated transfer of the 80 acres of land to Pierce, the acquisition of said note by Cochran, as a purchaser in due course, would preserve to him the benefits of the security for the payment of the note furnished by the vendor's lien retained in said instrument of date September 16, 1920, and recited in the note as security for the payment of same.

As the involved note was negotiable in form and was purchased by Cochran before maturity, for value, appellee, the subsequent holder thereof, was entitled to the protection afforded a purchaser from a bona fide purchaser of a negotiable instrument, unless appellants established that Cochran had actual notice or knowledge of the infirmities in the note. The only issue made by the pleadings and evidence as to Cochran's notice or knowledge of the infirmities in the instrument executed in the form of a general warranty deed and in the $3,500 vendor's lien note recited therein, at the time of his purchase of the note, was that of actual notice; therefore the court properly submitted only that issue to the jury in so far as Cochran's connection with said transaction was concerned.

But there is another rule of law applicable to this question, independent of the pleadings as to notice to Cochran. Appellants' properly executed warranty deed conveying the 80 acres of land to Pierce having been placed on record, their continuance in the possession of said land was not notice to Cochran of their homestead claim, or of the simulated nature of the deed from them to Pierce.

Under article 5935, § 52, R. C. S. 1925, Negotiable Instruments Act, a holder in due course is one who has taken the instrument under the following conditions: (1) That it is complete and regular on its face; (2) that he became the holder of it before it was overdue; (3) that he took it in good faith and for value; (4) that at the time it was negotiated he had no notice of any infirmities in the instrument, or defect in the title of the person negotiating it. Under the language of this statute it is clear, beyond the peradventure

of a doubt, that one who purchases a negotiable promissory note from the payee named therein, before maturity and for value, is entitled to enforce the entire obligation represented by the note, both as to the amount of the indebtedness and the security for the payment of same, unless he had actual notice of the facts, which would render the note uncollectible, and as to the security therefor facts that would show that he had actual notice of the vice therein which would prevent the enforcement of same; and, further, that it would be immaterial that such purchaser had notice of such facts as would put a reasonably prudent man upon inquiry, which, if pursued, would lead to a discovery of the infirmities either in the note or in the security existing at that time for the payment of the note. Before the above statute was enacted it was held, in Graves v. Kinney, 95 Tex. 210, 66 S. W. 293, that the right of one who has purchased an apparent vendor's lien note created in a fictitious or simulated sale of homestead premises to enforce the lien against the homestead rests on the protection given a bona fide purchaser. This rule of law is not weakened by the rule that admits in evidence such facts as would be permissible in an ordinary case to show that the purchaser had knowledge of facts that would have put a reasonably prudent man upon inquiry, as such facts are permissible in evidence as a circumstance bearing upon and tending to show that the purchaser had actual notice or knowledge of the fraud in a transaction under investigation, or as to alleged vice existing in the execution of the note, but otherwise the proof of such fact is immaterial. Hamilton-Turner Grocery Co. v. Hander (Tex. Civ. App.) 253 S. W. 833; Hynes v. Winston (Tex. Civ. App.) 40 S. W. 1025; Daniel v. Spaeth (Tex. Civ. App.) 168 S. W. 509; Turner v. Grobe (Tex. Civ. App.) 44 S. W. 898; Mulberger v. Morgan (Tex. Civ. App.) 47 S. W. 379; National Bank v. Young, 41 N. J. Eq. 531, 7 A. 488, 490.

In the last-cited case the court held: "Upon principle, as well as by the weight of authority, it is settled that mere notice of facts, such as would have put a prudent person upon inquiry, is not sufficient to impeach the title of the holder of negotiable paper taken for value before maturity, and his right to recover can be defeated only by proof of such circumstances as show that he took the paper with knowledge of some infirmity in it, or with such suspicion, with regard to its validity, as that his conduct in taking it was fraudulent."

The only evidence bearing upon the question of Cochran having actual notice in reference to the homestead rights asserted by appellants is the fact that they remained in possession of the 80 acres of land after the execution of the purported deed to Pierce, and the testimony of R. L. and H. S. Ledbetter,

which, if the jury had accepted as credible, would have been sufficient to have established that Cochran not only had actual knowledge of both the homestead character of the 80 acres of land and the fictitious nature of the conveyance by the Ledbetters to Pierce, but that he was one of the original conspirators in the whole fraudulent scheme. Cochran died before the trial of this case, and this fact the jury had the right to, and no doubt did, consider in determining the credibility of, and the weight to be given the testimony of, said witnesses impeaching his possession of the note. No other facts or circumstances were introduced in evidence, tending to show any character of notice to Cochran, and, as the deed of reconveyance, executed by Pierce and wife to R. L. Ledbetter, was not of record at the time Cochran purchased the note, he was not charged with the constructive notice which that deed might have purported had it been recorded prior to his purchase. The continued possession of the land by appellants was not notice to Cochran of the true nature of the transaction, either under the deed from the Ledbetters to Pierce or of the unrecorded deed of reconveyance by the Pierces to R. L. Ledbetter, inasmuch as there was of record the deed properly executed by appellants to Pierce. Eylar v. Eylar, 60 Tex. 315; Graves v. Kinney, supra; Brooker v. Wright (Tex. Civ. App.) 216 S. W. 196.

■ Complaint is made of the refusal of the court to submit the following issues, requested by appellants, viz.: "No. 11. Did plaintiffs, prior to the institution of this suit, offer to pay defendant the $3,500 note in question"; and "No. 12. Did defendant Martinez refuse to accept payment of the $3,500 note prior to the institution of this suit?"

The refusal of said issues was not error, neither being material to the issues presented by the pleadings and supported by the evidence of the litigants, for the reason that, if the jury answered the other issues submitted favorably to appellants, they would have been entitled to the land, without payment of any sum whatever to appellee, and, if on the other hand same should be answered in such a way as to uphold the validity of the lien on the 80 acres of land, appellants would have no legal right of redemption, and would be compelled to meet the conditions of appellee's offer of redemption in order to recover the land. Liability for payment of the note on the part of the maker, Pierce, nor of the payee Ledbetter, as indorser, was contested; the only matter in controversy between appellants and appellee being the homestead claim of appellants to said 80 acres of land. This is recognized by one of the grounds of appellants' special exception, viz.: "Because under such pleading, if defendant has a valid lien on the property in question, he has heretofore exercised his right to execute such lien under the deed of trust and has received title from the trustee, and if such lien was not in fact valid, trustee's deed would be invalid," addressed to paragraph 16 of appellee's answer, alleging his willingness for the court to enter judgment for appellants for the title and possession of said 80 acres of land, provided judgment was rendered in his favor creating a lien thereon for $8,005.34, the full amount of the various claims for money alleged to have been paid out by appellee in acquiring said note, for interest and attorney fee thereon, taxes, costs of improvements made on said land, etc. However, let it be assumed, for the purpose of disposing of this question, that said issues were submitted and each answered in the affirmative; in what respect would the effect and extent of the judgment rendered be changed thereby? Appellants admitted no right in appellee to enforce a lien upon the land for any amount whatever; nor did they tender any amount of money to appellee in their pleadings. Appellee, on his part, did not admit that appellants had any right to redeem the land, but offered as a matter of his volition to permit them to do so, if he were repaid what he had been out in the course of the entire transaction. Had the jury answered, in connection with answers made to the other issues submitted, issues Nos. 8 and 9 in the affirmative, the court would necessarily have entered judgment for appellants for recovery of the land without allowing appellee any sum, and would have given appellants damages, as found by the jury, for the wrongful detention of their land. However, the jury having answered submitted special issues Nos. 8 and 9 in the negative, then, regardless of how they might have answered the requested issues Nos. 11 and 12, relating to tender, appellee would still have been entitled to the judgment which was actually entered in the case. Graves v. Kinney, Hamilton-Turner Grocery Co. v. Hander, supra.

We have carefully considered each of the assignments of error and propositions based thereon, not specifically discussed, and, finding no material error presented thereby, same are overruled.

■ The language of the judgment of the trial court, viz. "but if such payment is not made within such period of ninety days from this date, then the right of redemption shall cease, and the title of the defendant P. P. Martinez in and to such property shall become absolute," should not be construed to mean that said limitation of time would apply, although an appeal should be prosecuted from said judgment, but as meaning 90 days from the date of final judgment, in case of an appeal, entered by any court last passing upon and sustaining said judgment. This because, on an appeal being prosecuted therefrom, same could not become final until affirmed in the determination of said appeal,

the right to appeal not being by said provision denied to appellants, as they were not required to accept said judgment as final and conclusive in order that the right of redemption given thereby should be available to them—in other words, they were not required to waive the right of appeal.

We therefore conclude that said judgment should be, and it is hereby, in all things affirmed.

Affirmed.